212 F.3d 674 (1st Cir. 2000)
 SULAY JOBE, PETITIONER,
v.
IMMIGRATION AND NATURALIZATION SERVICE, RESPONDENT.
 No. 99-1064
 United States Court of Appeals For the First Circuit
 Heard November 5, 1999
Decided May 24, 2000
 
 [Copyrighted Material Omitted]
 Lidia M. Sanchez, with whom Cooper & Sanchez were on brief for petitioner.
 Brenda E. Ellison, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Civil Division, and David V. Bernal, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.
 Before Stahl, Circuit Judge, Bownes, Senior Circuit Judge, and Lipez, Circuit Judge.
 Bownes, Senior Circuit Judge.
 
 
 1
 Petitioner, Sulay Jobe, was ordered deported in absentia and failed to move to rescind that order within the 180 days allowed pursuant to § 242B(c)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252b (1994).[1] We note at the outset that the statutory provision at issue relating to the filing deadline has been repealed but replaced by a new provision which is essentially the same.[2] We also note that the parties agree that Pre-IIRIRA law applies.
 
 
 2
 Jobe alleges that both his failure to attend the hearing and his failure to file a timely motion were the result of ineffective assistance of counsel. We hold that the doctrine of equitable tolling applies to create an exception to the 180-day period for filing if the failure to timely file was the result of ineffective assistance of counsel. For the following reasons, we grant Jobe's petition for review and remand to the Board of Immigration Appeals ("BIA") with instructions to remand to the Immigration Court for further proceedings consistent with this opinion.
 
 I.
 
 3
 The facts are taken from the administrative record. Jobe is a native and citizen of Gambia who allegedly does not read, write or speak English. He entered the United States on or about June 19, 1994, as a nonimmigrant visitor for business. He was authorized to remain in the United States until July 18, 1994. Without authorization from the Immigration and Naturalization Service ("INS"), he remained in the United States beyond that date. On September 9, 1994, Jobe voluntarily contacted the INS and filed an application for political asylum. On February 6, 1996, Jobe was informed that his application was denied, and his case was referred to an Immigration Judge ("IJ") for a hearing.
 
 
 4
 On February 14, 1996, the INS served Jobe with an Order to Show Cause ("OSC") and Notice of Hearing. The OSC charged Jobe with remaining in the United States longer than permitted, in violation of § 241(a)(1)(B) of the INA, 8 U.S.C. § 1251(a)(1)(B) (1994). The hearing was scheduled for May 22, 1996 in Boston, Massachusetts. Because Jobe does not read, write or speak English, he contacted a friend from his native country to arrange for legal representation. Through his friend, Sulay Bah, Jobe retained attorney Earl S. David to represent him in his asylum proceedings.On April 12, 1996, Attorney David wrote to the Immigration Court in Boston, requesting a change of venue to New York because Jobe had moved there. Prior to the hearing of May 22, 1996, Jobe contacted Attorney David (through Bah) to inform him that he would be unable to attend the May 22 hearing because of a back injury. Bah reported to Jobe that he had contacted Attorney David, who informed him that the case had already been transferred to New York and that Jobe would be contacted when the court set a new hearing date.
 
 
 5
 Neither the petitioner nor his attorney were present at the May 22 hearing. The IJ found that Jobe had abandoned his claims for relief and ordered him deported. Jobe alleges that he knew nothing of this deportation order until he filed an application to renew his employment authorization. The INS denied that employment application on December 4, 1996 because of the previous in absentia deportation order.
 
 
 6
 On February 11, 1997, Jobe moved, through new counsel, to reopen and stay the deportation proceedings. He argued that his failure to appear at his asylum hearing was the result of both exceptional circumstances under INA § 242B(c)(3)(A) and lack of proper notice under INA § 242B(c)(3)(B).
 
 
 7
 On February 12, 1997, the IJ denied Jobe's Request for Stay of Deportation and Motion to Reopen. The IJ dismissed Jobe's claim of exceptional circumstances as untimely, noting that pursuant to § 242B(c)(3)(A) of the INA, an order of deportation rendered in absentia may be rescinded by filing, within 180 days of the IJ's order, a motion to reopen based upon exceptional circumstances. The IJ denied Jobe's motion to reopen on the ground that Jobe filed his motion more than two months late, some eight months after the court issued its order.
 
 
 8
 The IJ also rejected Jobe's claim that he did not receive proper notice of the hearing. The IJ found that Jobe was personally served with the Notice of Hearing and that the INA did not require that the notice be read to Jobe in his native language. The IJ further noted that the OSC clearly indicated the consequences of Jobe's failure to appear.
 
 
 9
 Jobe appealed the IJ's order to the BIA on March 10, 1997. He argued that the IJ erred in denying his motion to reopen because his failure to appear at the original hearing and his failure to timely file his motion to reopen were caused by ineffective assistance of counsel. He also argued that the IJ erred in denying his motion to reopen where "the Court's own failure to respond to Respondent's former counsel's request to change venue was the proximate cause of Respondent's unawareness of his asylum hearing date."
 
 
 10
 On December 15, 1998, the BIA dismissed Jobe's appeal. The BIA upheld the IJ's denial of the motion to reopen because Jobe was "statutorily barred from rescinding the deportation order on the basis of exceptional circumstances" since his motion was filed beyond the 180-day limitation imposed by § 242B(c)(3)(A). The BIA dismissed the claim that Jobe did not receive proper notice of the hearing, holding that "the [IJ's] failure to rule upon the motion to change venue did not excuse the respondent's duty to appear at the previously-scheduled deportation hearing." It can be fairly inferred that the BIA felt it had no jurisdiction to even evaluate the merits of Jobe's ineffective assistance of counsel claim.
 
 
 11
 We think it advisable to state explicitly that our statement of the facts as recited in the administrative record is not to be construed as implied findings by us or any kind of a signal to the IJ.
 
 
 12
 Petitioner appeals the decision of the BIA to this court, on the ground that the BIA erred in determining that he was statutorily time-barred from seeking recission of the deportation order on the basis of exceptional circumstances under INA § 242B(c)(3)(A). The petitioner argues that the BIA failed to consider that exceptional circumstances existed because of ineffective assistance of counsel. He has abandoned the improper notice claim.
 
 II.
 
 13
 We review legal conclusions of the BIA de novo. See Meguenine v. INS, 139 F.3d 25, 27 (1st Cir. 1998); see also Wallace v. Reno, 194 F.3d 279, 280-81 (1st Cir. 1999); Debab v. INS, 163 F.3d 21, 24 (1st Cir. 1998). The Respondent, in its brief, contends that the BIA's denial of a motion to reopen is reviewed under the abuse of discretion standard. In this case, the BIA denied Jobe's motion to reopen based on exceptional circumstances on the ground that it was statutorily time-barred. The BIA did not exercise any discretion in determining that the petitioner filed his motion beyond the 180-day time limit; indeed, it appears that the BIA believed that it had no discretion. This, therefore, is a purely legal question, warranting de novo review by this court.
 
 
 14
 As an initial matter, we conclude that we have jurisdiction to consider the issue of whether there may be an equitable exception to the 180-day time bar. "[I]ssues not raised before the BIA may not be raised for the first time on a petition to review." Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999). Jobe's brief before the BIA was not a model of effective legal argument, but it was sufficient to bring the issue to the attention of the BIA. This fact is evident from the BIA's decision, which addressed the issue by holding that "a claim of ineffective assistance of counsel does not constitute an exception to the 180-day statutory limit for the filing of a motion to reopen to rescind an in absentia order of deportation under section 242B(c)(3)(A) of the Act, on the basis of exceptional circumstances." A.R. at 3 (citing Matter of Lei, Interim Decision 3356 (BIA 1998)).
 
 
 15
 Jobe argues that "[t]he Board of Immigration Appeals erred in deciding that [it was] statutorily barred from rescinding the deportation order on the basis of exceptional circumstances under [former INA] Section 242B(c)(3)(A)." Pet'r Br. at 10. That subsection provided for the recission of a deportation order entered in absentia as follows:
 
 
 16
 (3) RECISSION OF ORDER--Such an order may be rescinded only
 
 
 17
 (A) upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2) of this section),[3] or
 
 
 18
 (B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) of this section or if the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien.
 
 
 19
 INA § 242B(c)(3), 8 U.S.C. § 1252b(c)(3).
 
 
 20
 In seeking to avoid subsection (c)(3)(A)'s time bar, Jobe essentially argues that the 180-day filing requirement is subject to equitable tolling.[4] The doctrine of equitable tolling applies "to prevent unjust results or to maintain the integrity of a statute," Salois v. Dime Savings Bank, 128 F.3d 20, 25 (1st Cir. 1997), by stopping the running of a filing deadline "in the light of established equitable considerations," Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 617 (3d Cir. 1998).
 
 
 21
 Although equitable tolling, when it applies, is invoked "sparingly," Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990), it is a well-established doctrine that applies to a variety of time limitations. "Statutory filing deadlines are generally subject to the defense[] of . . . equitable tolling." United States v. Locke, 471 U.S. 84, 94 n.10 (1985). Because Congress is aware of this, there is a "rebuttable presumption" that equitable tolling applies to a given statute. Irwin, 498 U.S. at 95. "Congress, of course, may provide otherwise if it wishes to do so," id., and thus "[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute," United States v. Beggerly, 524 U.S. 38, 48 (1998). A court confronting this issue must therefore ask, "Is there good reason to believe that Congress did
 
 
 22
 not want the equitable tolling doctrine to apply?" United States v. Brockamp, 519 U.S. 347, 350 (1997) (emphasis in original).
 
 
 23
 In answering that question, we start with the language of the statute itself. See Shendock v. Director, Office of Workers' Comp. Programs, 893 F.2d 1458, 1462 (2d Cir. 1990) (per curiam). The text of § 242B says nothing explicitly about whether equitable tolling is allowed. In prior cases, courts have found the presence or absence of the words "limitations" or "jurisdiction" to be important, because a statute of limitations is usually subject to equitable tolling, while a jurisdictional provision never is. See, e.g., Miller, 145 F.3d at 618 (finding persuasive the use of "period of limitations" and "limitations period" and absence of word "jurisdiction"); Shendock, 893 F.2d at 1362 (giving "considerable weight" to Congress's use of "jurisdiction" in filing provision). Here, however, the statute contains neither of those terms. Nor is it exactly analogous to either a statute of limitations that governs the commencement of an action, see, e.g., Miller, 145 F.3d at 618 (allowing tolling of one-year period for bringing habeas petition under AEDPA), or a deadline for filing a petition for review or notice of appeal that invokes a court's jurisdiction for the first time, see, e.g., Pimental-Romero v. INS, 952 F.2d 564, 564 (1st Cir. 1991) (holding period for filing petition for review is jurisdictional).
 
 
 24
 We also do not think that the statutory language read as a whole is dispositive. It might be argued that § 242B(c)(3)(A), in allowing an alien to rescind an in absentia deportation order when exceptional circumstances caused his failure to appear, is itself a sort of equitable safety valve provision, and that Congress by placing a time limit within the statute intended to preclude equitable relief after 180 days. On the other hand, the very existence of subsection (c)(3) shows that Congress was concerned with the potential unfairness of in absentia deportation orders. On this basis, it could be argued that the 180-day filing deadline serves in the large majority of cases to balance fairness with finality, without precluding equitable tolling in the rare case where application of that deadline could cause serious injustice--injustice possibly comparable to that arising from an in absentia deportation order without notice, the recission of which has no time limit. See INA § 242B(c)(3)(B). This interpretation draws additional force from the extraordinary nature of the forfeiture involved. If equitable tolling is not allowed, an alien can be deported, possibly to face persecution, without a hearing on the merits because, through no fault of his own, he failed to appear at his deportation hearing and failed to file a timely motion to reopen. This potential result, which in some cases could raise serious due process concerns,[5] weighs against a conclusion that Congress did not intend to allow equitable tolling here. See Morris v. Government Devel. Bank, 27 F.3d 746, 750 (1st Cir. 1994) ("In a proper case, the doctrine of equitable tolling ensures fundamental fairness.").[6]
 
 
 25
 The scant legislative history is of little help, although it does express Congress's concern with fairness. See H.R. Conf. Rep. 101-955 (1990) ("[T]he conferees expect that in determining whether an alien's failure to appear was justifiable the Attorney General will look at the totality of circumstances to determine whether the alien could not reasonably have been expected to appear."). Importantly, however, we find nothing in the statutory language or legislative history that gives us "good reason to believe that Congress did not want the equitable tolling doctrine to apply." Brockamp, 519 U.S. at 350 (emphasis in original). In short, we conclude that the statutory language and legislative history do not rebut the presumption in favor of equitable tolling.
 
 
 26
 Although the INS does not make this argument before us, it might be thought that this is a case where deference to an administrative agency is appropriate under the rule of Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). Under Chevron's familiar formulation, when Congressional intent on a given issue is not clear, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Id. at 844. "We think it is a significant question," however, whether the issue before us "is the sort of policy matter which Congress intended the agency to decide and thus whether the doctrinal underpinnings of Chevron are present here." Goncalves v. Reno, 144 F.3d 110, 127 (1st Cir. 1998); see also Bamidele v. INS, 99 F.3d 557, 561 (3d Cir. 1996) (not deferring to administrative interpretation because "[a] statute of limitations is not a matter within the particular expertise of the INS [but rather] a clearly legal issue that courts are better equipped to handle") (internal quotation marks omitted).
 
 
 27
 Furthermore, even if we assume arguendo that Chevron deference could be appropriate on the filing deadline issue, we conclude that deference is not warranted here. Before reviewing the administrative interpretation, we must determine whether Congress's intent is clear; if it is, "that is the end of the matter." Chevron, 467 U.S. at 842. In making that determination, we "employ[] traditional tools of statutory construction," id. at 843 n.9, including "familiar presumptions," Goncalves, 144 F.3d at 127. Here we have employed the presumption that equitable tolling applies and concluded that, there being no "good reason to believe" otherwise, Brockamp, 519 U.S. at 350, Congress's intent to allow equitable tolling is clear. Similarly, in Goncalves we found a clear Congressional intent not to apply an AEPDA restriction retroactively based on the presumption against retroactivity, "even without regard to the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." Goncalves, 144 F.3d at 133 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987)).
 
 
 28
 Moreover, we note that the INS does not contend that there is an agency interpretation to which we should defer under Chevron. The agency position is found in two BIA published opinions holding that there are no equitable exceptions to § 242B(c)(3)(A)'s 180-day time bar. See In re A-A-, Interim Decision 3357 (BIA 1998), aff'd by Anin, 188 F.3d 1273; In re Lei, Interim Decision 3356 (BIA 1998). In doing so, the BIA relied solely on the language of the statute, which it held (in identical terms in both cases, which were decided the same day) to be "clear on its face and unambiguous," stating that "[h]ad Congress intended to provide for an exception to the 180-day time limit based on the ineffective assistance of counsel, it could have done so." The BIA did not purport to adopt an administrative interpretation of an ambiguous statute or to exercise an impliedly delegated authority to fill a policy-making gap left by Congress. As should be clear from our discussion above, we believe the BIA's legal conclusion that Congress did not intend an equitable exception to the 180-day filing deadline is erroneous because it fails to recognize the presumption that equitable tolling applies.
 
 
 29
 Two of our sister circuits have spoken on the issue before us. In Lopez v. INS, 184 F.3d 1097 (9th Cir. 1999), the Ninth Circuit held that § 242B(c)(3)(A)'s 180-day time bar is subject to equitable tolling, based on the presumption that "[t]his equitable doctrine is read into every federal statute of limitations." Id. at 1100 (quoting Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946)). The court allowed Lopez, the victim of fraud and ineffective assistance by a non-lawyer "counsel" who posed as an attorney, to file a motion to rescind his in absentia deportation order after more than 180 days. See id. at 1099-1100. In Anin, 188 F.3d at 1278, the Eleventh Circuit came to the opposite conclusion. It held that the 180-day limit "is mandatory and jurisdictional," id., and thus refused to toll the 180-day deadline for ineffective assistance of counsel.
 
 
 30
 Neither case contains extensive discussion of the issue, but we find Lopez more persuasive than Anin. The Anin court's assertion that the time limit in § 242B(c)(3)(A) is jurisdictional does not rest on any authority--the case cited for this proposition, Kamara v. INS, 149 F.3d 904, 906 (8th Cir. 1998), says no such thing, but merely decides, without mentioning jurisdiction or tolling, that a particular motion was time-barred. Nor does Anin contain any analysis of the statutory language. See 188 F.3d at 1278. The Lopez court's examination of the issue, although no more detailed, appears to recognize the Supreme Court's dictate that equitable tolling applies unless there is "good reason to believe that Congress did not want [that] doctrine to apply." Brockamp, 519 U.S. at 350 (emphasis in original).
 
 
 31
 Neither the language nor legislative history of the statute, the case law, nor the administrative opinions of the BIA convince us that Congress did not want equitable tolling to apply to § 242B(c)(3)(A). We therefore hold that the 180-day limit in that subsection is subject to equitable tolling.
 
 
 32
 In an ordinary civil case our holding might be of no help to Jobe. In such a case a litigant is usually saddled with the errors of his lawyer, so that ineffective assistance of counsel would not justify equitable tolling. Deportation proceedings are considered civil, not criminal, and thus no Sixth Amendment right to counsel is involved. See Bernal-Vallejo v. INS, 195 F.3d 56, 63 (1st Cir. 1999). Due process still guarantees an alien a reasonable opportunity to be heard, however, see id., and the BIA accordingly has recognized that in absentia deportation proceedings are an exception to the rule that a client is bound by his lawyer's missteps. In multiple cases, the BIA has held that ineffective assistance of counsel can constitute "exceptional circumstances" permitting an alien to rescind an in absentia deportation order under § 242B(c)(3)(A). See In re N-K- & V-S-, Interim Decision 3312 (BIA 1997); In re Rivera-Claros, Interim Decision 3296 (BIA 1996); In re Grijalva-Barrera, Interim Decision 3284 (BIA 1996). This is consistent with Congress's desire to avoid the unfairness of in absentia deportation orders when "the alien could not reasonably have been expected to appear." H.R. Conf. Rep. 101-955 (1990).
 
 
 33
 We think the same rationale extends to equitable tolling of the 180-day filing deadline because cases may arise where "the alien could not reasonably have been expected" to file a motion to reopen within 180 days. We have said in other contexts that equitable tolling is justified in "exceptional cases." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); Chico-Velez v. Roche Products, Inc., 139 F.3d 56, 58 (1st Cir. 1998). If, as the BIA acknowledges, ineffective assistance of counsel can be "exceptional circumstances" excusing failure to appear, we believe that in "exceptional cases" it can also excuse failure to file a timely motion to reopen.
 
 
 34
 In deciding whether ineffective assistance justifies equitable tolling in a given case, immigration judges and the BIA should be guided by the standards generally applicable to equitable tolling. We have said that in cases involving tolling of statutes of limitations,
 
 
 35
 [c]courts weigh five factors in assessing claims of equitable tolling: (1) the lack of actual notice of the filing requirement; (2) the lack of constructive notice of the filing requirement; (3) the diligence in pursuing one's rights; (4) the absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the filing requirement.
 
 
 36
 Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 61 (1st Cir. 1998) (citing Kale v. Combined Ins. Co., 861 F.2d 746, 752 (1st Cir. 1988)). These factors are not necessarily a perfect fit in deciding whether to toll a filing deadline in an immigration case, but their guidance should be useful. The fundamental principle is that equitable tolling "is appropriate only when the circumstances that cause a [party] to miss a filing deadline are out of his hands." Salois, 128 F.3d at 25 (internal quotation marks omitted). For this reason, "[e]quitable tolling is unavailable where a party fails to exercise due diligence." Benitez-Pons, 136 F.3d at 61.
 
 
 37
 In this case, the IJ and the BIA believed that Jobe's motion to reopen was time-barred as a matter of law. They therefore made no factual findings with respect to the reasons for his failure to appear at the deportation hearing, his failure to file a timely motion to reopen, or the merits of his claim of ineffective assistance of counsel.
 
 
 38
 We disagree with the dissent that on this record Jobe's ineffective assistance claim must fail. We neither agree nor disagree with the dissent as to how the affidavits would be interpreted. There is one that may have the wrong date on it, which would be crucial if the date is correct. The other one does not give the date the notice was received by Bah. And the dissent states with underlined emphasis that the letter concerning the IJ's deportation decision "arrived at petitioner's and Bah's residence within a month of the ruling." The fact is that it arrived at Bah's residence. We do not know if petitioner was living there at the time. We assume that he was not because Bah's affidavit further indicates that he "contacted" Jobe to notify him of the decision.
 
 
 39
 We do not think that the affidavits can or should be used for finding, as the dissent does, that "petitioner received at least constructive notice of the in absentia deportation shortly after it was handed down." That is a construct that does not stand scrutiny. It constitutes appellate findings of facts based on inferences and unsubstantiated assumptions. There is no indication in the record that the IJ ever considered these affidavits. The only way to determine the facts in this case is to have a hearing before the Immigration Court. That is all that our decision means.
 
 
 40
 On the limited record before us, we cannot say as a matter of law whether or not Jobe is entitled to equitable tolling. If Jobe's affidavit is believed, it appears likely that ineffective assistance of counsel caused both his failure to appear and his failure to file a timely motion. On the other hand, Bah's affidavit and Attorney David's letter suggest that Jobe may have been at least partially at fault. We are in no position to resolve this evidentiary conflict, which primarily involves a credibility determination. Moreover, if Jobe's version is found credible, further factual development is necessary to evaluate his ineffective assistance claim.
 
 
 41
 On remand, the Immigration Judge should hold a hearing to determine whether § 242B(c)(3)(A)'s 180-day filing deadline should be equitably tolled due to ineffective assistance of counsel. If so, the IJ should act on the motion to reopen to rescind as if it were timely, applying existing BIA precedent in deciding whether exceptional circumstances excused Jobe's failure to appear at the deportation hearing.
 
 
 42
 Petition for review granted; remanded to the Board of Immigration Appeals with instructions to remand to the Immigration Court for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, 3009-546 (1996), which altered, inter alia, this Court's jurisdiction to review deportation orders previously granted jurisdiction under § 106 of the INA. In particular, IIRIRA § 306(b) repealed INA § 106, formerly 8 U.S.C. § 1105a (1994), and IIRIRA § 306(a) replaced it with INA § 242, now codified at 8 U.S.C. § 1252 (Supp. II 1996). The effective date of the IIRIRA is April 1, 1997. See IIRIRA § 309(a), reprinted in 8 U.S.C. § 1101 (history) (Supp. II 1996). Aliens in deportation proceedings before April 1, 1997 and who have a final deportation order entered more than 30 days after IIRIRA's September 30, 1996 enactment date are not subject to these permanent "new rules." See IIRIRA § 309(c)(1) (as amended). Rather, they are subject to IIRIRA's "transitional changes in judicial review" (the "transitional rules"). IIRIRA § 309(c)(1), (4) (as amended). Under the transitional rules, the "new rules" do not apply unless a case meets the enumerated exceptions in IIRIRA § 309(c)(4). None of these exceptions applies in the instant case. Therefore, we evaluate Jobe's claim under the "old rules," INA § 242B(c)(3)(A), 8 U.S.C. § 1252b(c)(3)(A) (1994), despite the fact that they since have been repealed. See IIRIRA § 308(b)(6).
 
 
 [2]
 It should also be noted that the revised immigration law contains a provision that is identical (except that deportation is now called "removal") to the provision we are dealing with here. See INA § 240(b)(5)(C)(i), 8 U.S.C. § 1229a(b)(5)(C)(i).
 
 
 [3]
 Former INA § 242B(f)(2), 8 U.S.C. § 1252b(f)(2), provided: "The term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien."
 
 
 [4]
 Although his argument is not well-developed, Jobe argues for equitable tolling by urging us to adopt the interpretation of § 242B put forward by Board Member Rosenberg in the concurring and dissenting opinion in Matter of Lei, Interim Decision 3356 (BIA 1998). That opinion addressed this issue by appealing to "principles of equity" and concluding that "the ineffective assistance of former counsel in failing to timely file a motion under § 242B(c)(3)(A) constitutes 'exceptional circumstances' and allows recission outside the 180-day cutoff date for equitable reasons." Id. (Rosenberg, B.M., concurring and dissenting). In these circumstances we decline to say that Jobe's argument is so perfunctory that it should be deemed waived.
 
 
 [5]
 Although our disposition of the equitable tolling issue makes it unnecessary to resolve Jobe's claim that he has been denied due process, we note that "there is a due process violation if the [deportation] proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." Bernal-Vallejo v. INS, 195 F.3d 56, 63 (1st Cir. 1999) (citing Lozada v. INS, 857 F.2d 10, 13 (1st Cir. 1988)).
 
 
 [6]
 The limited possibility of collateral review does not alter this analysis. Although the dissent notes that habeas relief may be available when the attorney error is of constitutional dimensions, that remedy would not reach the full range of cases where equitable relief might be appropriate because, as we explain infra, ineffective assistance of counsel in an immigration case is not per se a constitutional violation. Furthermore, we doubt whether, as the dissent asserts, an alien who missed the deadline for filing a motion to reopen nevertheless has the right to file a request asking the BIA or the Immigration Court to reopen the case sua sponte. And even if such an oxymoronic request were possible in theory, it would likely be of little help to the alien in practice, since he would probably be deported or removed before the request could be heard. See 8 C.F.R. §§ 3.2(f), 3.23(b)(1)(v) (removal is automatically stayed only by filing of motion to reopen in absentia order).
 
 
 
 43
 STAHL, Circuit Judge, dissenting.
 
 
 44
 In vacating the BIA's judgment on the ground that the time limit in INA § 242B(c)(3)(A) is subject to equitable tolling, the majority has reached out to decide an important[1] and controversial[2] statutory issue that was neither argued by petitioner (below or in this court) nor made the subject of a request for supplemental briefing. Moreover, the majority's sua sponte legal ruling is entirely unnecessary to resolve the petition for review, which can and should be rejected on the facts alone.
 
 I.
 
 45
 In the five-page argument section of his brief, petitioner Sulay Jobe makes a single, unelaborated, constitutional argument: "Due process requires that petitioner be given the opportunity and consideration of the 'exceptional circumstances' requirement available pursuant to section 242B and be allowed to rescind the prior order of deportation based on ineffective assistance of counsel." (Pet'r Brief at 14.) Contrary to the majority's suggestion, see ante at 678-79 & n.4, petitioner's brief makes no statutory argument. Thus, it fails to mention "equitable tolling" (let alone the propriety of such tolling in the context of attorney incompetence), "statutes of limitations," "jurisdiction," the Chevron doctrine, or the circuit split engendered by the issue under consideration. Moreover, none of the four cases petitioner cites in his brief discusses any of these topics.[3]
 
 
 46
 But even if the majority has acted defensibly in construing petitioner's appellate brief to have advanced the statutory argument now addressed and accepted, it in my view has gone too far in regarding the argument as having been raised in the administrative proceedings. Before the BIA, petitioner, through counsel, devoted only a single paragraph of his brief to whether his motion to reopen could be regarded as timely. That paragraph, which is devoid oF.Supp.orting citations, simply cannot be construed as in effect having argued to the BIA that INA § 242B(c)(3)(A) is analogous to a statute of limitations and therefore subject to equitable tolling. The paragraph in question states:
 
 
 47
 The Immigration Judge erred in finding that Mr. Jobe's motion was "untimely." Section 242B(c)(3)(A) does provide a 180-day period in which to reopen based on "exceptional circumstances." Given that this Board has recognized that ineffective assistance of counsel constitutes "exceptional circumstances," it would be an affront to both common sense and reason to hold that the Respondent is barred from reopening past the 180-day period where the ineffective assistance is itself the cause of Respondent's untimeliness. This would mean that the fate of any alien who was the victim of an in absentia order which resulted from ineffective assistance would depend solely upon his fortuitous discovery of his attorney's error within the 180-day period. This reliance upon chance would obviously lead to disparate and unfair results to similarly-situated aliens.[4]
 
 
 48
 And, contrary to the majority's suggestion, see ante at 678, the BIA did not decide this issue either in this case or in In re Guo Yu Lei. As Board Member Rosenberg recognized in her partial dissent in In re Guo Yu Lei, the BIA decided in that case only that, because of its mandatory language, "[t]he statute contains no exceptions to [§ 242B(c)(3)(A)'s] time bar." There and here, the BIA did not discuss whether principles of equitable tolling might apply despite the statute's mandatory language.
 
 
 49
 Although we can deny a petition challenging a BIA judgment on any independently sufficient ground made manifest by the record (so long as we have subject matter jurisdiction over the petition and the denial is not on a ground that the agency might not embrace, see Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. 747, 756 n.7 (1986)), we have no jurisdiction to grant such a petition on a theory not first presented to the BIA but within its jurisdiction to decide, see, e.g., Luis v. INS, 196 F.3d 36, 40 (1st Cir. 1999) (rejecting on jurisdictional grounds an argument not first made to the BIA) (IIRIRA transitional rules case); Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999) (same); Ravindran v. INS, 976 F.2d 754, 760-61 (1st Cir. 1992) (similar) (pre-IIRIRA case). Thus, in vacating the BIA's judgment on a statutory argument petitioner failed to press at either the administrative level or in his brief to this court, the majority acts beyond its jurisdiction.[5]
 
 II.
 
 50
 As should be clear, I am not inclined to take a final position on the merits of the majority's conclusion that INA § 242B(c)(3)(A) is subject to equitable tolling without adversarial argument after the issue properly has been raised. While the majority's opinion is well written and plausibly reasoned, it ventures into an enormously tangled statutory and regulatory thicket without input from the agency charged with interpreting and enforcing the statute in the first instance. Thus, there is a real danger that the majority has acted without the benefit of argument that might have caused it to pause.
 
 
 51
 For example, one might wonder why the majority would strain to read the word "only" out of this statute, see ante at 679 (quoting the statute); id. at 10-11 (analyzing the statutory language), when forms of relief other than equitable tolling are apparently available to the victimized alien. As I already have mentioned, the alien could petition for collateral relief under 28 U.S.C. § 2241. In addition, the Immigration Court and the BIA retain residual authority to reopen a removal or deportation proceeding sua sponte "at any time," see 8 C.F.R. §§ 3.23(b), 3.2(a) (1999), and an alien can request an exercise of such authority, see id. According to the Ninth Circuit, the BIA has stated that it will exercise this reopening authority in "exceptional circumstances," Socop-Gonzalez v. INS, 208 F.3d , 838, 844-45 (9th Cir. Mar. 27, 2000) (summarizing the administrative background), and, as the majority points out, the BIA has held that ineffective assistance of counsel, in the context of § 242B(c)(3)(A), constitutes such an exceptional circumstance, see ante at 682 (citing cases). Thus, although the applicable regulations mirror the statute in requiring that a motion to reopen an in absentia deportation order be filed within 180 days of the order, see 8 C.F.R. §§ 3.23(b)(4)(iii)(A)(1), 3.2(c)(3)(i), it appears that a petitioner who has missed the 180-day deadline because of ineffective assistance might be entitled to ask the Immigration Court and the BIA to exercise their authority to reopen sua sponte. Moreover, the Ninth Circuit has held that decisions by the BIA not to exercise this authority are subject to judicial review. See Socop-Gonzalez, 208 F.ed at 843-47[6]
 
 
 52
 I mention these statutes, regulations, and decisions, which have not been cited in the briefs, neither to endorse them nor to undercut the majority's ultimate conclusion. Rather, I mention them because they, and perhaps others that I have not been able to locate on my own, surely ought to be taken into full consideration by any court deciding whether § 242B(c)(3)(A)'s time bar should be read to admit of exceptions.
 
 III.
 
 53
 Leaving aside these difficult issues of waiver and exhaustion of administrative remedies, the majority should not have reached the equitable tolling question because, even if the statute is susceptible of tolling, this petitioner is not entitled to it. The majority's factual recitation depicts the petitioner as having attempted to prosecute his asylum claim diligently. See ante at 677. But a careful reading of the affidavits of petitioner's friend and interpreter, Sulayman Bah, put in evidence by petitioner himself, belies this depiction.
 
 
 54
 In paragraph 4 of his August 4, 1997 affidavit, Bah corroborates the allegation which is at the center of petitioner's claim of attorney dereliction and which has been fully credited by the majority:
 
 
 55
 Attorney David promised to transfer the case to New York. Attorney David told me that he had written for the case to be transferred from Boston to New York. I believed him and told [petitioner] to disregard the hearing date scheduled for Boston. I told [petitioner] that Immigration will inform him of his new Court date in New York.
 
 
 56
 But the majority ignores paragraph 5 of the same affidavit, which states: "The next letter addressed to [petitioner] was a ruling from the Immigration Court that was done in [petitioner's] absence. I advised [petitioner] of this letter and told him to see an Attorney immediately." (Emphasis added.) And, the majority further disregards Bah's sworn "correction" to his affidavit, dated September 11, 1997, in which Bah makes clear two crucial facts: (1) the letter describing the Immigration Court's ruling made in petitioner's absence arrived at petitioner's and Bah's residence[7] within a month of the ruling;[8] and (2) Bah "immediately" told petitioner about the arrival of the letter.
 
 
 57
 Crediting these uncontradicted sworn statements (which, I repeat, were put into the administrative record by petitioner himself)[9] yet reading the record in a light most favorable to petitioner, I am willing to assume that petitioner came to know in May or June of 1996 only that the Immigration Court had taken some action on his asylum application. In other words, I assume that, because of language barriers, petitioner failed to appreciate the full import of the Immigration Court's notice and thus was unaware that he had been ordered deported in absentia. Even so, petitioner's failure to take measures to learn the meaning of the notice once he received it dooms any argument for equitable tolling he might have.
 
 
 58
 As the majority acknowledges, equitable tolling is to be applied "sparingly." Ante at 679(quoting Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)). Constructive knowledge of a filing requirement, an absence of due diligence in pursuing one's rights, and unreasonableness in remaining ignorant of a filing requirement all militate against tolling. See ante at 683 (quoting Benitez-Pons v. Puerto Rico, 136 F.3d 54, 61 (1st Cir. 1998)). In my view, a fair reading of the record permits only one conclusion: petitioner received at least constructive notice of the in absentia deportation order shortly after it was handed down and well before the expiration of the 180-day period for moving to reopen the proceedings, but unreasonably failed to follow up on the notice with counsel until it was too late. Thus, even if the time period in INA § 242B(c)(3)(A) can be equitably tolled in some circumstances, it should not be tolled on the facts of this case.
 
 
 59
 I dissent.
 
 
 
 Notes:
 
 
 [1]
 Although the majority opinion construes a rescinded statute, § 242B(c)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252b(c)(3)(A) (1994), Congress replaced that provision with one that is nearly identical. See ante at 676 & nn.1, 2. As a result, the majority opinion is likely to be regarded as authoritative on the operation of the current statute, as well as the one at issue in this case.
 
 
 [2]
 See ante at 681-82 (comparing Anin v. Reno, 188 F.3d 1273, 1278 (11th Cir. 1999) (holding that INA § 242B(c)(3)(A) sets forth a "mandatory and jurisdictional" time bar), with Lopez v. INS, 184 F.3d 1097, 1100 (9th Cir. 1999) (holding that the time bar in § 242B(c)(3)(A) is not jurisdictional and thus subject to equitable tolling)).
 
 
 [3]
 Petitioner does not even cite the Ninth Circuit's holding in Lopez. The only cases he mentions are (1) In re Guo Yu Lei, Interim Decision 3356 (BIA 1998) (en banc) (cited in acknowledgment of the BIA's en banc holding that INA § 242B(c)(3)(A)'s time bar does not admit of an exception for ineffective assistance of counsel); (2) In re Grival-Barrera, Interim Decision 3284 (BIA 1996) (cited in support of the proposition that a timely motion to reopen based on ineffective assistance of counsel can ground the rescission of an in absentia deportation order under the statute); (3) Rios-Berrios v. INS, 776 F.2d 859, 861 (9th Cir. 1985) (cited in support of the proposition that "an alien is entitled to due process under the Fifth Amendment in his deportation hearing"); and (4) Sharma v. INS, 89 F.3d 545, 548 (9th Cir. 1996) (cited in support of the proposition that "due process, in deportation proceedings, includes the right to a full and fair hearing"). As the majority notes, see ante at note 4, petitioner also observes that Board Member Rosenberg dissented in part from the BIA's en banc ruling in In re Guo Yu Lei. In two sentences, petitioner at least arguably adopts by reference Rosenberg's contention that a strict construction of § 242B(c)(3)(A) raises due process concerns. See Pet'r Brief at 10 ("Board Member Rosenberg . . . stated that '[the statute] does not require us to enforce [INA §] 242B and its subsections narrowly and restrictively, and it does not preclude us from enforcing [§] 242B in its entirety, and consistently with the United States Constitution, guided by fairness and compassion.'"); id. at 11 ("Board Member Rosenberg in her dissent . . . states that [the majority's] ruling 'is contrary to the statutory language and the guarantee of fairness and due process of law deportation proceedings.'"). But these two sentences are insufficient to adopt by reference anything in Rosenberg's opinion beyond the due process argument that petitioner makes in his appellate brief. See United States v. Torres-Rosa, 209 F.3d 4, 7 (1st Cir. 2000) ("As a briefing technique, adoption [by reference] should be employed sparingly. The party seeking to adopt an argument has a burden, at the very least, to ensure that it is squarely before the court and to explain how and why it applies in his case.") (Emphasis added). And, in any event, Board Member Rosenberg simply does not develop an argument that § 242B(c)(3)(A) should be subject to equitable tolling. Her sporadic references to "principles of equity," see ante at n. 4, merely reinforce her lengthy argument that, in order to forestall constitutional complications, "nunc pro tunc relief" should be presumed available when ineffective assistance of counsel denies aliens their day in court and thus their constitutional due process rights. Thus, petitioner's two passing references to Board Member Rosenberg's opinion fall well short of putting into play the equitable tolling issue decided by the majority.
 
 
 [4]
 Perhaps because petitioner's arguments about the timeliness of the motion to reopen have been so lean, respondent INS's brief, while forthrightly acknowledging the Ninth Circuit's Lopez decision, devotes only a four-sentence footnote to the statutory issue on which the majority's ruling hinges. That footnote reads:
 The instant case is distinguishable from Lopez in that there is no indication that Jobe was injured by fraud such as to invoke any type of equitable tolling. Furthermore, the time limit on filing a motion to reopen under INA § 242B can best be considered mandatory and jurisdictional rather than as a statute of limitations which provides for equitable tolling. See Miller v. New Jersey State Department of Corrections, 145 F.3d 616[, 618] (3d Cir. 1998) ("In determining whether a specific time limitation should be viewed as a statute of limitations or a jurisdictional bar, we look to Congressional intent by considering the language of the statute, legislative history and statutory purpose.") (citation omitted). Section 242B(c)(3)(A) of the Act provides that an in absentia deportation order may be rescinded where the alien is claiming exceptional circumstances "only upon a motion to reopen filed within 180 days after the date of the order of deportation." (emphasis added). It is clear from the language of this statute that there are no exceptions to the 180-day time period. See In Re Guo Yu Lei, Interim Decision 3356 (BIA 1998) (analyzing plain language of section 242B(c)(3)(A) and statutory purpose). (Resp't Brief at 11 n.4.) Thus respondent, like petitioner, makes no mention of Chevron and no argument regarding the propriety of equitable tolling in the face of attorney incompetence.
 
 
 [5]
 Even when it is within our jurisdiction to address issues neither previously advanced in prior proceedings nor argued to us, see Fed. R. Crim. P. 52(b) (empowering us to notice "plain errors or defects affecting substantial rights . . . although they were not brought to the attention of the court"), we almost never do so, see, e.g., United States v. Rosario-Peralta, 199 F.3d 552, 563 n.4 (1st Cir. 1999) (noting that we "steadfastly" decline to address perfunctorily made arguments and citing exemplary cases); United States v. Salimonu, 182 F.3d 63, 74 n.10 (1st Cir. 1999) (similar). Although it might seem harsh to enforce a prudential waiver rule against a party, like petitioner, who may have been victimized by defective lawyering and whose liberty hangs in the balance, cf. ante at 680 & n.5 (justifying application of equitable tolling to INA § 242B(c)(3)(A) in part because of "the extraordinary nature of the forfeiture involved" and because in absentia deportations traceable to attorney incompetence may be so "fundamentally unfair" as to implicate "due process concerns"), we do so out of conviction that our law-stating function is best served when we insist on adversarial advocacy as a precondition to a judicial pronouncement, see Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 572 (1993) (Souter, J., concurring in part and concurring in the judgment) ("Sound judicial decisionmaking requires both a vigorous prosecution and a vigorous defense of the issues in dispute, . . . and a . . . rule announced sua sponte is entitled to less deference than one addressed on full briefing and argument." (citation and internal quotation marks omitted)). And we console ourselves that collateral review remains available to remedy liberty deprivations traceable to attorney error. See United States v. Rapoport, 159 F.3d 1, 3-4 & n.5 (1st Cir. 1998) (rejecting direct criminal appeal as untimely but expressly noting that defendant was not precluded from pressing a collateral challenge to his conviction under 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel); United States v. Costa, 890 F.2d 480, 483 (1st Cir. 1989) (regarding juror misconduct claim as waived but without prejudice to its being renewed as part of an ineffective assistance of counsel claim brought under § 2255). I mention the safety valve of collateral review because, as in the criminal context, it would appear that review under 28 U.S.C. § 2241 remains available to an alien victimized by attorney error of constitutional dimension. See Bernal-Vallejo, 195 F.3d at 63 (noting that attorney incompetence leading to a fundamentally unfair deportation proceeding can be a due process violation); Goncalvez v. Reno, 144 F.3d 110, 118-26 (1st Cir. 1998) (suggesting that collateral review under § 2241 remains available to aliens alleging that they are being deported in violation of constitutionally prescribed safeguards); Webb v. Weiss, 69 F. Supp. 2d 335, 336 (D. Conn. 1999) (addressing alien due process claim brought under § 2241).
 
 
 [6]
 At least two other courts have subjected such decisions to review without discussing their power to do so. See Mejia-Rodriguez v. Reno, 178 F.3d 1139, 1145 n.5 (11th Cir. 1999); Lucacela v. Reno, 161 F.3d 1055, 1059 (7th Cir. 1998). But, in dicta, we have opined that there is no right to judicial review of the BIA's decision not to exercise its authority to reopen. See Luis, 196 F.3d at 40; see also Prado v. Reno, 198 F.3d 286, 292 (1st Cir. 1999) (citing Luis); Anin, 188 F.3d at 1279 (asserting, without mentioning Mejia-Rodriguez, that there is no right to judicial review of such a decision).
 
 
 [7]
 The majority "assumes" that petitioner and Bah were not living together at the time the deportation notice arrived in New York because Bah states that, upon receipt of notice, he immediately "contacted" petitioner about the notice and "then left the county and later on heard that [petitioner] was arrested." See ante at 683. But petitioner clearly states in his affidavit that he moved from Boston to New York "to live with . . . Sulay Bah" in "March - early April, 1996." Moreover, the deportation notice which Bah received was addressed directly to petitioner (there is no "c/o") at Bah's New York address. Finally, nowhere does petitioner suggest either that he moved again after arriving in New York or that notice of the Immigration Court's decision was sent somewhere other than his place of residence. The majority's assumption is thus at odds with the record evidence.
 
 
 [8]
 In his sworn correction, Bah states: "When the notice of decision came to the New York address, on or about May - June, 1997, I received the notice of decision from the Court at 933 E. 224th Street, Bronx, NY 10466." It is clear from context that Bah intended to state that the letter arrived in May - June 1996, as the reopening proceedings were already well underway by May 1997 and there has been no suggestion that notice of the Immigration Court's May 22, 1996 ruling took over a year to reach New York and arrived when it already was old news. The majority's suggestion that the sworn correction might have been correctly dated is thus plainly contradicted by the record as a whole.
 
 
 [9]
 The majority suggests that I engage in appellate fact finding because I assume, as Bah twice states in affidavits submitted by petitioner, that Bah informed petitioner about the arrival of the notice. The suggestion is unfounded. Petitioner (who has been counseled at all relevant times) does not deny that notice of the Immigration Court's May 22, 1996 in absentia deportation order arrived at the address he had furnished the Immigration Court. Nor does he deny that Bah gave him timely notice that a letter had arrived from the Immigration Court and that he should consult an attorney immediately. At most, the relevant portions of his February 9, 1997 affidavit can be taken to suggest that petitioner failed to appreciate the import of the May 22, 1996 notice:
 [Prior to the May 22, 1996 hearing], Mr. Bah told me that Attorney David told him that we would be contacted when the new date was received . . . . Since that time I have been waiting to be informed of the new hearing date . . . . Based on this information that I received, I was not aware that I was still required to appear in Boston on May 22 for a hearing . . . . If I had known that I had missed a hearing which I was required to appear at in order to process my asylum application, I would have taken whatever steps were possible to protect my rights to a hearing.