# United States Court of Appeals
## For the First Circuit

No. 99-1064

SULAY JOBE,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, <u>Chief Judge</u>,
Bownes, <u>Senior Circuit Judge</u>,
Selya, Boudin, Stahl, Lynch, and Lipez,
<u>Circuit Judges</u>.

<u>Linda M. Sanchez</u>, with whom <u>Cooper & Sanchez</u> were on brief for petitioner.

<u>Iris Gomez</u> and <u>Harvey Kaplan</u>, with whom <u>Kaplan, O'Sullivan and Friedman</u>, was on brief for Massachusetts Law Reform Institute, Political Asylum Immigration Representation Project, Greater Boston Legal Services, International Institute of Boston, Community Legal Services and Counseling Center, Harvard Immigration and Refugee Clinic, Boston College Immigration and Asylum Project, National Immigration Project of the National Lawyers Guild, and American Immigration Lawyers Association, amici curiae.

<u>Brenda E. Ellison</u>, Senior Litigation Counsel, Office of

Immigration Litigation, Civil Division, United States Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Civil Division, and David V. Bernal, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

January 30, 2001

OPINION EN BANC

**STAHL, <u>Circuit Judge</u>.** Petitioner Sulay Jobe failed to appear at his deportation hearing and was ordered deported <u>in absentia</u>. More than eight months later, Jobe filed a motion to reopen asking that his deportation order be rescinded. In support of the motion, Jobe alleged that ineffective assistance of counsel had caused him to miss the deportation hearing. An immigration judge ("IJ") denied the motion as untimely because, by statute, such motions must be filed within 180 days of the deportation order. Jobe appealed, contending that the same attorney incompetence that caused him to miss his hearing also caused him to miss the deadline for filing his motion to reopen. The Board of Immigration Appeals ("BIA") dismissed the appeal. Jobe then sought review of the BIA's decision in this court. On May 24, 2000, a divided panel vacated the BIA's order and remanded for a hearing to determine whether the running of the 180-day period for filing a motion to reopen should be equitably tolled on the facts of this case. Thereafter, respondent Immigration and Naturalization Service ("INS") petitioned for and was granted <u>en</u> <u>banc</u> review of the panel's holding. We simultaneously withdrew the panel opinion. We now dismiss Jobe's petition for review.

I.

-3-

In June 1994, Jobe, a native and citizen of Gambia, entered the United States as a nonimmigrant visitor for business. He was authorized to remain in the United States until July 18, 1994, but remained beyond that date without authorization from the INS. On September 9, 1994, Jobe contacted the INS and filed an application for political asylum. On February 6, 1996, the INS informed Jobe that his application had been denied and his case referred to an IJ for a hearing.

On February 14, 1996, the INS served Jobe with an order to show cause ("OSC"), which charged him with remaining in the United States longer than permitted, in violation of § 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1251(a)(1)(B) (1994).[1]  A hearing on the

---

[1]On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, 3009-546 (1996), which redesignated former INA § 241 as § 237, transferred it to a different section of the United States Code, and otherwise brought significant changes to the country's immigration laws.  But because petitioner was in deportation proceedings before April 1, 1997 (IIRIRA's "Title III-A effective date") and had his final order of deportation entered more than 30 days thereafter, he is subject only to the IIRIRA's so-called "transitional rules."  See IIRIRA § 309(c)(1),(4) (as amended) ("transitional rules").  And under the transitional rules, the IIRIRA's permanent new rules do not apply unless a case meets one of the enumerated exceptions set forth in IIRIRA § 309(c)(4).  All agree that none of these exceptions applies to this case.  Thus, we evaluate Jobe's petition under the "old rules," such as INA § 241(a)(1)(B), even though they have since been repealed or redesignated.

OSC was scheduled in Boston on May 22, 1996. The OSC specifically advised Jobe that, if he failed to appear for his hearing and his deportability were established, he would be deported in absentia. The OSC also advised Jobe that, if were deported in absentia, he could not have the order rescinded except that he "may file a motion to reopen the hearing within 180 days after the date of the [deportation] order if [the alien is] able to show that [his] failure to appear was because of exceptional circumstances . . . ."[2] In March or early April of 1996, Jobe moved to New York City to live with his friend, Sulayman Bah. Jobe does not write or speak English, and thus used Bah as an intermediary to retain attorney Earl S. David to represent him.

The crucial facts of this case, which we derive from Jobe's own submissions during the administrative proceedings, are as follows. On April 12, 1996, Attorney David wrote to the

---

[2]The OSC also advised Jobe of his entitlement to file a motion to reopen an in absentia deportation order

> at any time if [the alien] can show that [he] did not receive written notice of [the hearing on the OSC] and [he] had provided [his] address and telephone number (and any changes of [his] address and telephone number) as required . . . and did not appear at [his] hearing through no fault of [his] own.

In the administrative proceedings, Jobe claimed that he received inadequate notice of the hearing on his OSC, but he has abandoned that claim in this court.

Immigration Court in Boston, requesting a change in venue to New York because Jobe now lived there. Subsequently, Jobe, again using Bah as an intermediary, contacted Attorney David to inform him that he would be unable to attend the May 22 hearing because of a back injury. According to affidavits submitted by Bah and Jobe (and disputed by Attorney David), David informed Bah that the case already had been transferred to New York and that Jobe would be contacted when the court set a new hearing date. The case never was transferred. Neither Jobe nor David attended the May 22 hearing, and Jobe was ordered deported <u>in</u> <u>absentia</u>. In his brief, Jobe suggests that he only learned that he had been ordered deported <u>in</u> <u>absentia</u> when he received a December 4, 1996 notice from the INS denying his application to renew his employment authorization. At that time, the 180-day statutory window for seeking rescission on the basis of exceptional circumstances – a statutory window of which Jobe had been advised in the OSC – had closed, but only by a couple of weeks.

Nonetheless, Jobe failed to take any action until February 11, 1997, when, acting through new counsel, he moved to reopen and stay the deportation proceedings. Insofar as is here relevant, he argued that his failure to appear was the result of "exceptional circumstances" – i.e., ineffective assistance of

counsel[3] – and that his deportation order thus should be rescinded. See INA § 242B(c)(3)(A), codified at 8 U.S.C. § 1252b(c)(3)(A) (1994)[4] (permitting the rescission of an in absentia deportation order "only . . . upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2) of this section)").[5] On February 12, 1997, an IJ denied the motion as untimely, noting that it was brought well outside the 180-day window provided in the statute. On March 10, 1997, Jobe appealed

---

[3]Because deportation proceedings are civil, the Sixth Amendment guarantee of effective counsel in criminal proceedings is inapplicable. Nonetheless, we have recognized that "there is a due process violation if [a deportation proceeding] was so fundamentally unfair that the alien was prevented from reasonably presenting his case." Bernal-Vallejo v. INS, 195 F.3d 56, 63 (1st Cir. 1999) (collecting cases). It is in this sense that the phrase "ineffective assistance of counsel" has made its way into immigration cases, and it is in this sense that we use the term in this opinion.

[4]Although INA § 242B(c)(3)(A), codified at 8 U.S.C. § 1252b(c)(3)(A) (1994), has been repealed, Congress replaced the provision with one that is in all respects identical except that what formerly was called "deportation" is now referred to as "removal." See INA § 240(b)(5)(C)(i), codified at 8 U.S.C. § 1229a (b)(5)(C)(i).

[5]Former INA § 242B(f)(2), codified at 8 U.S.C. § 1252b(f)(2), provided: "The term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien."

the IJ's decision to the BIA.  He argued that the IJ erred in denying his motion to reopen because his failure to file the motion within the 180-day statutory period was caused by the same ineffective assistance of counsel that caused him to miss his deportation hearing in the first instance.  On December 15, 1998, the BIA dismissed Jobe's appeal because Jobe was "statutorily barred [by the 180-day statutory window] from rescinding the deportation order on the basis of exceptional circumstances."

Jobe then petitioned us to review the BIA's order.  In his brief, Jobe argued that the BIA violated his due process rights by applying the 180-day statutory period in circumstances where the same ineffective assistance of counsel that caused him to miss his hearing also caused him to miss the deadline for filing his motion to reopen.  A divided panel of this court granted the petition.  The majority construed Jobe's brief as setting forth an argument that the 180-day time period prescribed in INA § 242B(c)(3)(A) is subject to equitable tolling, and, after noting that the issue has split the circuits,[6] agreed with

---

[6]Compare Anin v. Reno, 188 F.3d 1273, 1278 (11th Cir. 1999) (holding that INA § 242B(c)(3)(A) sets forth a "mandatory and jurisdictional" time bar) with Lopez v. INS, 184 F.3d 1097, 1100 (9th Cir. 1999) (holding that INA § 242B(c)(3)(A)'s time bar is not jurisdictional and thus subject to equitable tolling); cf. Iavorski v. INS, 232 F.3d 124 (2d Cir. 2000) (holding that the equitable tolling doctrine applies to the 90-day period provided in 8 C.F.R. § 3.23(b)(1)(2000) for filing motions to reopen based on "new facts").

Jobe's argument on the merits. The majority also determined that Jobe's submissions were sufficient to warrant further inquiry, at the agency level, into whether the statute should be equitably tolled in the circumstances of this case. The dissent argued, inter alia, that the majority should not have decided whether the statute is subject to equitable tolling because, even if it were, Jobe had failed to establish possible entitlement to equitable relief. Thereafter, the INS sought and was granted rehearing en banc, and the panel opinion was withdrawn.

## II.

In its petition for rehearing en banc, the INS makes a powerful argument that INA § 242B(c)(3)(A) should be regarded as mandatory and jurisdictional and thus not subject to equitable tolling – an argument that is skillfully countered not only by our dissenting brothers, but also by the Massachusetts Law Reform Institute, which filed a well argued amicus brief on behalf of itself and the following interested parties: the Political Asylum Immigration Representation Project; Greater Boston Legal Services; the International Institute of Boston; the Community Legal Services and Counseling Center; the Harvard Immigration and Refugee Clinic; the Boston College Immigration and Asylum Project; the National Immigration Project of the National Lawyers Guild; and the American Immigration Lawyers Association. We

-9-

appreciate the importance of the issue and the effort that has been expended in framing it for us in a most helpful way. But because Jobe has not made a prima facie showing of entitlement to equitable tolling or otherwise convinced us that application of INA § 242B(c)(3)(A)'s time limit violates his due process rights on the facts of this case, we dismiss the petition without deciding whether the equitable tolling doctrine may apply to this statutory provision.

Even when it applies, equitable tolling is a "sparingly" invoked doctrine. <u>Irwin</u> v. <u>Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990). We have identified five factors that should guide courts in evaluating a claimant's entitlement to such tolling: (1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit. <u>See</u> <u>Benitez-Pons</u> v. <u>Commonwealth of Puerto Rico</u>, 136 F.3d 54, 61 (1st Cir. 1998) (deciding whether to toll the running of a statute of limitations) (citing <u>Kale</u> v. <u>Combined Ins. Co.</u>, 861 F.2d 746, 752 (1st Cir. 1988)). The fundamental principle is that equitable tolling "is appropriate only when the circumstances that cause a [party] to miss a filing deadline are out of his hands." <u>Salois</u>

-10-

v. Dime Savings Bank, 128 F.3d 20, 25 (1st Cir. 1997) (citation and internal quotation marks omitted). For this reason, "[e]quitable tolling is unavailable where a party fails to exercise due diligence." Benitez-Pons, 136 F.3d at 61.

In this case, the evidence submitted by Jobe in support of his equitable tolling argument[7] undermines his claim to have been sufficiently diligent to warrant an equitable tolling of the statute. In paragraph 4 of his August 4, 1997 affidavit, Bah largely corroborates the allegation which is at the heart of Jobe's claim that attorney dereliction caused him to miss the May 22, 1996 deportation hearing:

> Attorney David promised to transfer the case to New York. Attorney David told me that he had written for the case to be transferred from Boston to New York. I believed him and told [petitioner] to disregard the hearing date scheduled for Boston. I told [petitioner] that Immigration will inform him of his new Court date in New York.

But then, in paragraph 5 of the same affidavit, Bah states: "The next letter addressed to Sulay Jobe was a ruling from the Immigration Court that was done in Sulay's absence. I advised Sulay of this letter and told him to see an Attorney immediately." (Emphasis added.). Moreover, in his September 11,

---

[7]For purposes of this analysis, we shall assume arguendo that Jobe has presented a preserved and sufficiently developed argument in favor of equitably tolling the running of the 180-day time period in INA § 242B(c)(3)(A).

1997 sworn "correction" to his August 4 affidavit, Bah makes clear two crucial facts: (1) the notice of the IJ's *in absentia* deportation order was in Bah's hands within a month of the IJ's

ruling;[8] and (2) Bah "_immediately_" told Jobe about the arrival of

_____

[8]In his sworn correction, Bah states: "When the notice of decision came to the New York address, on or about May - June, 1997, I received the notice of decision from the Court at 933 E. 224th Street, Bronx, NY 10466."  It is clear from context, however, that Bah intended to state that the notice of decision arrived in May - June 199_6_.

First, both Bah's affidavit (in paragraph 6) and his sworn correction to the affidavit state that Bah told Jobe about the notice from the Immigration Court _prior_ _to_ Jobe's arrest.  The exact date of Jobe's arrest is not in the record, but Jobe's March 10, 1997 appeal to the BIA quite clearly indicates that Jobe was detained at that time.  It is thus evident that Bah received the notice well before the May-June 1997 time-frame referenced in the sworn correction.

Second, throughout these proceedings, there never has been any suggestion that the notice of deportation was lost in the mail for nearly a year and arrived at a time when the BIA already had under advisement Jobe's appeal of the denial of the motion to reopen.  Indeed, there never has been a suggestion that the arrival of the notice was in any way untimely, as there surely would have been had that in fact been the case.  Thus, already knowing (as we do) that (1) Bah's sworn correction is mistaken insofar as it refers to May-June 1997; and (2) notice of a ruling handed down in Boston on May 22, 1996 is likely to reach New York by mail sometime around May-June 1996, the logical inference is that Bah (who swore out the correction in September 1997) inadvertently substituted "1997" for the intended "1996."

Third, and perhaps most importantly, Jobe bears the burden of making a prima facie showing of entitlement to equitable tolling, and therefore of filling in any gaps in the record regarding whether his is a case warranting equitable relief.  On this point, we regard it as particularly telling that Jobe has failed throughout these proceedings to offer any explanation for the discrepancy between the date of the _in_ _absentia_ deportation order and the dates referenced in Bah's sworn correction to his affidavit, even in the face of (1) our request that he address his factual entitlement to equitable tolling in our solicitation of supplemental briefs following the granting of the petition for rehearing _en_ _banc_; and (2) the dissent from the now-withdrawn panel opinion, which argued that Bah's sworn correction obviously substituted "1997" for the intended "1996."

the notice.

Thus, even if we assume that "exceptional circumstances" caused Jobe to miss his hearing, and even if we credit the unsworn statement in Jobe's brief which suggests that Jobe did not actually ascertain that he had been ordered deported until December 1996, we are left with Bah's two uncontradicted sworn statements, put in the record by Jobe himself, which combine to establish that, in May or June of 1996, several months before the expiration of the 180-day time period set forth in INA § 242B(c)(3)(A), Jobe learned that an IJ had taken some action on his asylum application and was advised to consult an attorney immediately. Despite this knowledge and advice, Jobe took no action to protect his rights for more than half a year. In our view, this fact conclusively establishes that Jobe was insufficiently diligent in pursuing his asylum application to warrant the provision of any equitable relief that might be available under the statute. So too does this fact fatally undermine the premise of the as-applied due process argument Jobe presses in his appellate brief: that his counsel's ineffectiveness was the cause of his failure to file a timely motion to reopen his deportation proceedings and rescind the deportation order.

III.

-14-

For the reasons stated, we do not decide whether the equitable tolling doctrine applies to INA § 242B(c)(3)(A) but rather dismiss Jobe's petition because he is not factually entitled to equitable tolling and because application of the statute in these circumstances does not deprive him of due process.

**<u>Petition dismissed</u>.** Dissenting opinion follows.

**BOWNES, <u>Senior Circuit Judge</u>, with whom LIPEZ, <u>Circuit Judge</u>, joins (dissenting).** I dissent for two reasons. First, I do not think there is a sufficient basis to find that Jobe had notice of the IJ decision to deport him <u>in absentia</u> well before the expiration of the 180-day time period set forth in INA § 242B(c)(3)(A). Second, even if Jobe received such notice, that fact alone does not establish that the running of the 180-day period for filing a motion to reopen should not be equitably tolled. The majority says Jobe was insufficiently diligent in pursuit of his rights. That diligence analysis requires consideration of other factors, particularly Jobe's alleged reliance on an attorney who may have represented him ineffectively. Without further fact-finding, we cannot know the circumstances surrounding Jobe's untimely motion to reopen, and so cannot fairly dispose of his case. Regrettably, the majority does the fact-finding here. That is not a proper appellate function.

## I.

The majority finds "that in May or June of 1996, several months before the expiration of the 180-day time period set forth in INA § 242B(c)(3)(A), Jobe learned that an IJ had taken some action on his asylum application and was advised to consult an attorney immediately. Despite this knowledge and

-16-

advice, Jobe took no action to protect his rights for more than half a year." I do not think the majority's reasoning withstands scrutiny. It depends in large part upon the interpretation of two affidavits of a presumed friend of Jobe, Sulayman Bah. The first affidavit is dated 4/August/1997. There are no dates in the body of the affidavit. It states as follows:

<u>AFFIDAVIT OF SULAYMAN BAH</u>

I, <u>SULAYMAN BAH</u>, having been duly sworn upon oath, do hereby depose and say:

1. My name is Sulayman Bah and I live at 933 E. 224th Street, #1A, Bronx, New York 10466.

2. I served as a mediator between Sulay Jobe and Attorney Earl David.

3. Sulay Jobe asked me if I knew of any New York Attorneys because attorneys in Rhode Island are extremely expensive. I introduced Sulay Jobe to Earl David. Attorney David charged Sulay Jobe $600.00 for his legal services.

4. Attorney David promised to transfer the case to New York. Attorney David told me that he had written for the case to be transferred from Boston to New York. I believed him and told Sulay Jobe to disregard the hearing date scheduled for Boston. I told Sulay Jobe that Immigration will inform him of his new Court date in New York.

5. The next letter addressed to Sulay Jobe was a ruling from the Immigration Court that was done in Sulay's absence. I advised Sulay of this letter and told him to see an Attorney immediately.

-17-

6. I found out shortly thereafter that Sulay had been arrested by Immigration.

The second affidavit is to "correct the record in the matter of Sulay Jobe." It was executed on September 11, 1997. It states:

I, <u>Sulaman Bah</u>, being duly sworn, deposes and states the following under penalty of perjury: I would like to correct the record in the matter of Sulay Jobe. I told Mr. Jobe to disregard the hearing date since I was told by Mr. David that he wrote a letter to transfer the file. When the notice of decision came to the New York address, on or about May - June, 1997, I received the notice of decision from the Court at 933 E. 224th Street, Bronx, NY 10466. I immediately contacted Mr. Jobe regarding this notice. I then left the country and later on heard that Mr. Jobe was arrested.

X   /s/ Sulaman Bah
Sulaman Bah

The majority makes the rather remarkable finding: "It is clear from context, however, that Bah intended to state that the notice of decision arrived in May - June 1996." Majority Op. at 11.

This affidavit was given "to correct the record in the matter of Sulay Jobe." How do we know that Bah intended to state that the notice of decision arrived in May-June 1996? The only dates given in his affidavit are "on or about May-June 1997." How can the majority be so sure that the dates Bah gave in his corrected affidavit were wrong? We know nothing about Bah except

what he states in his affidavits.  His deposition was not taken.
We have no way of judging either his credibility or competence.

The dates of the receipt of the notice found by the
majority must be established by a preponderance of the evidence.
The court attempts to meet this burden by stating

> Thus, already knowing (as we do) that
> (1) Bah's sworn correction is mistaken
> insofar as it refers to May-June 1997; and
> (2) notice of a ruling handed down in Boston
> on May 22, 1996 is likely to reach New York
> by mail sometime around May-June 1996, the
> logical inference is that Bah (who swore out
> the correction in September 1997)
> inadvertently substituted "1997" for the
> intended "1996."

Majority Op. at 11.  But we do not <u>know</u> in the true sense of the
word anything but what is stated in the affidavit.  Bah may have
been mistaken about the dates he stated in the affidavit but we
do not <u>know</u> that he was.

It seems significant that the only substantive
difference between Bah's first and second affidavit is the
inclusion of dates.  If the affidavit was amended to clarify the
timing of events, which seems to have been the intent, this makes
it more likely that the May-June 1997 date is correct.  If
providing a date was the purpose of the amendment, we can presume

-19-

that particular attention was given to the accuracy of the reported date.[1]

It should also be noted that Bah's second affidavit states that he received notice of the decision at 933 E. 224th Street, Bronx, NY 10466. His first affidavit confirms this address, but includes an apartment number, #1A. Attorney David's venue change request states that Jobe lived at the New York address, but at apartment #1. We do not know whether the correct address was the one with apartment #1, the one with apartment #1A, or the one without any apartment number. It is, at least, possible that these variant addresses might have affected the date Bah received the order.

The majority also states: "Indeed there never has been a suggestion that the arrival of the notice was in any way untimely, as these surely would have been had that in fact been the case." Majority Op. at 11. This, of course, ignores that there is only one date given in Bah's two affidavits. The second affidavit states that "the notice of decision came to the New York address, on or about May-June 1997." The decision of the

---

[1]We do not even know that the same person made out both affidavits. The name of the affiant in the first affidavit is given as <u>Sulayman</u> Bah; in the second the first name is <u>Sulaman</u>. I do not think it fair to make a finding that results in deportation of an individual by changing dates in a sworn affidavit which may have been executed by two different affiants.

court assumes that there is always an orderly and logical sequence to a chain of events. Such a belief is natural to judicial thinking and analysis. But as Justice Holmes pointed out: "The life of the law is not logic but experience." And experience teaches that many things happen that cannot be explained by logical analysis. There are at least three explanations that might account for the dates mentioned in Bah's affidavits: a late mailing by the INS, a late delivery by the post office, or a delivery to a wrong address.

I do not think that the affidavits can or should be used for finding, as the court does, that "Jobe took no action to protect his rights for more than half a year." Majority Op. at 12. It constitutes appellate findings of facts based on inferences and unsubstantiated assumptions. The only way to determine the facts in this case is to have a hearing before the Immigration Court.

## II.

Aside from the uncertainty about the date on which Jobe received notice of the IJ's decision, the facts here do not establish Jobe's ineligibility for equitable tolling. The majority relies exclusively upon one "fact," based on one of Bah's affidavits, to conclude that Jobe was insufficiently diligent in pursuing his asylum application, and hence he would

-21-

not be entitled to equitable relief.  That one fact is Bah's assertion that he advised Jobe of the IJ's decision immediately after he received it and told Jobe to see an attorney.  But that one fact does not exhaust the reasonable diligence inquiry when the record strongly suggests Jobe's dependence on others to protect his rights, including an attorney who may have been consistently ineffective in protecting Jobe's rights prior to the May 22, 1996 hearing, and subsequent to the issuance of the in absentia deportation order.

From the time his hearing before the IJ was scheduled, Jobe relied upon his friend Bah, as well as Attorney David, for guidance in his immigration proceedings.  Jobe states in his affidavit (drafted by a translator fluent in both English and Jobe's native Wolof), "I do not read, write or speak the English language."  Jobe sought the assistance of Bah in obtaining counsel, and the two of them met with Attorney David in New York with Bah acting as translator.  The nature of the attorney-client relationship established at their initial meeting is unclear.  Jobe's affidavit suggests his understanding that David would represent him in his asylum claim generally: "I retained Attorney Earl S. David to represent me in my asylum proceedings."  This understanding would have been reasonable, based on the fact that David represented Bah in the immigration proceedings resulting in

-22-

his successful asylum claim.  Guided by Bah, Jobe would likely seek the same service from David.  Nevertheless, David's letter of justification to the Board of Immigration Appeals defending himself against charges of ineffective assistance of counsel suggests that he was retained exclusively to obtain a change of venue for Jobe's asylum hearing, a seemingly minimal task for the $600 fee that Bah says David received.  Thus, at the beginning of the attorney-client relationship, there may have been miscommunications between Jobe and David.

With Bah's assistance, Jobe requested that David obtain a transfer of his Boston-based immigration court hearing to his new home, New York.  As he recalls, "Attorney David told me that he would be transferring his case to New York."  Bah corroborates this account, while David denies it, saying that "[u]nder no circumstances did I promise to transfer the file as the power to do so arises from the government, not this office."

Prior to the May 22nd hearing date, Jobe says he again contacted David, through Bah, to say he would be unable to make the Boston court appearance due to a back injury.  According to Jobe, "Attorney David told [Bah] that [the] case had already been transferred to New York and that a new hearing date would be set," a communication that David again claims never happened.  Indeed, David says he told Jobe through Bah that he would have to

attend the hearing on May 22, 1996 in Boston regardless of the outcome of the change of venue request.

In reality, David's request for a change of venue, submitted on April 12, 1996 with no supporting evidence or affidavits, was never adequate to win a transfer.  A change of venue request may be granted by an IJ for "good cause." 8 C.F.R. 3.20.  In seeking a change of venue, "the mere fact that an applicant allegedly resides . . . in another city, without a showing of other significant factors associated with such residence, is insufficient." Matter of Rahman, 20 I & N Dec. 480 (BIA 1992).  Yet that residence in another city is all David offered to the IJ to support the change of venue request. Furthermore, it is difficult to credit David's insistence that he told Jobe he had to appear in Boston on May 22 under any circumstances, ready, apparently, to represent himself, after Jobe had retained David to represent him in his asylum proceedings.  Jobe hired David because he could not effectively represent himself.  Yet Attorney David did not attend the May 22nd sitting in Boston.  Moreover, if David was so sure that the May 22 hearing would take place, and he told Jobe to be there without David's representation, did he give Jobe any advice on what he had to do to protect his interests?  Apparently not.

David says he just told Jobe to be there, an ineffective contribution even on David's version of the facts.

David characterizes the events surrounding the transfer request and missed hearing as "an unfortunate miscommunication." Indeed, it was an unfortunate miscommunication, depriving Jobe of the opportunity to present his asylum claim and resulting in the issuance of an <u>in absentia</u> deportation order. It was also another miscommunication that seemed to plague the David-Jobe attorney-client relationship.

We also do not know from this record what Jobe understood about the information given to him by Bah concerning the decision of the IJ after Jobe failed to appear in Boston on May 22. In his affidavits, Bah only indicates that he "contacted Mr. Jobe regarding this notice," and states his impression that "a ruling from the Immigration Court . . . was done in Sulay's absence." Bah does not say that he told Jobe of his imminent deportation. In addition, it is not clear from the record that Jobe ever took possession of the correspondence. The best evidence that Jobe did not understand the effect of the order is that he sought out the Immigration Office in December regarding his employment authorization, a risk an immigrant would be unlikely to take if he understood his deportation was imminent.

If Jobe did not actually receive notice of the IJ's <u>in absentia</u> decision, he then learned of his deportation status only on December 4, 1996 when he sought employment. The timespan between this notification and the February 11, 1997 filing of motions to reopen and to stay deportation cannot be characterized as a failure to take action, as the majority suggests.

Meanwhile, having advised Jobe "to see an Attorney immediately," Bah, Jobe's only liaison to his attorney, leaves the country. As noted, Jobe states in his affidavit that he was relying on Attorney David to represent him in his asylum proceedings. David apparently had a more limited view of his obligation to Jobe, possibly leaving Jobe to rely on an attorney who felt no obligation to help him even after the issuance of the <u>in absentia</u> deportation order. There is some evidence that David himself learned of the deportation order. He writes that, apparently after issuance of the IJ decision: "I tried to reach my client by mail and by the number I had in my file but it was to no avail." While David had failed to file a EOIR-28 "Notice of Entry of Appearance" form with the INS,[2] another suggestion of ineffective representation, the fact that David's address appears

---

[2]The BIA Practice Manual indicates that an entry of appearance must be filed upon "the first appearance of an attorney or representative," as well as with the filing of an appeal, a motion to reconsider, a motion to reopen, and when there is a change of business address.

prominently on the request for change of venue may have been enough for him to be listed as the attorney of record in Jobe's immigration court proceedings. If David did know of the _in absentia_ deportation order, there is no evidence that he made any effort to file a motion to reopen in a timely fashion, despite his apparent awareness that an "unfortunate miscommunication" between himself and Jobe contributed to Jobe's failure to appear in Boston.

Without clarification of David's obligation to protect Jobe after the issuance of the _in absentia_ deportation order, and David's apparent inaction despite any such obligation, a real issue of ongoing ineffective assistance during this critical period exists, which would further account for Jobe's delay in seeking relief from the _in absentia_ deportation order.

In summary, without the support of Bah to comprehend the English language, and perhaps without the support of a reliable attorney who Jobe thought was protecting his interests, it may have been difficult for Jobe to understand his peril and to press his claim more diligently. Yet the majority sees no relationship between these facts and the equitable tolling doctrine. Whether a party is reasonably diligent in ascertaining their claim is a matter of fact. _See_ _Salois_ v. _Dime Sav. Bank_, 128 F.3d 20, 26 (1st Cir. 1997). In this case, there has been no

-27-

fact-finding on the diligence issue because the BIA concluded that the 180-day time limit was not subject to equitable tolling. As a legal proposition, that conclusion is wrong. See Lopez v. INS, 184 F.3d 1097, 1100 (9th Cir. 1999). Equitable tolling does apply to the 180-day time limit. There is conflicting and inadequate evidence as to Jobe's notice of the IJ decision, his capacity to pursue a timely motion to reopen, and the burdens imposed by ongoing ineffective assistance of counsel. There has been no chance for Jobe to make a showing as to his diligence, and the case should not be disposed of on the basis of one fact which, upon fair examination, may show little about Jobe's reasonable diligence in pursuing his rights.

## III.

I think it important to focus on the situation that led to this case. Jobe was a native and citizen of Gambia where he had been employed as a chauffeur for a deposed president's Minister of Education and Agriculture. According to the record, Jobe claimed that he had reason to fear that he would be hurt and/or killed if he were to return to Gambia. Jobe overstayed his visa and though he was undetected by the INS, he presented himself and sought political asylum. When the INS received this request, they denied the request for political asylum and put him into deportation proceedings. The INS issued an Order to Show

-28-

Cause and told him that he could request political asylum at his deportation hearing. We know the rest: he failed to appear at his May 22 hearing and was ordered deported. Therefore he never had the opportunity to request political asylum at a deportation hearing; his ultimate goal when he presented himself before the INS.

I do not think it fair or just to deport an individual and put his life in danger on the basis of appellate fact-finding. We should rule, as the panel did originally, that the 180-day time limit for reopening is subject to equitable tolling, that ineffective assistance of counsel may provide a basis for the application of the equitable tolling doctrine, and that there should be a hearing by the IJ to determine whether the running of the 180-day period for filing a motion to reopen should be equitably tolled on the facts of this case. If so, there should be a hearing on Jobe's motion to reopen, giving him an opportunity to make the case that he should be given a new hearing on his asylum application.

For the foregoing reasons, I respectfully dissent.