[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/12/99

THOMAS K. KAHN
CLERK

_____

No. 98-9013

_____

D. C. Docket No. A71-031-600

ALEXIS ANIN,

Petitioner,

versus

JANET RENO, Attorney General
of the United States, IMMIGRATION
AND NATURALIZATION SERVICE,

Respondents.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(July 12, 1999)**

Before HULL and MARCUS, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Alexis Anin petitions for review of a final order of the Board of Immigration

Appeals ("BIA") denying his motion to reopen his deportation order. Anin argues

that the BIA's decision constituted an abuse of discretion because he lacked proper notice of his deportation proceedings, his lack of notice violated due process, his lawyer's ineffective assistance of counsel amounted to an exceptional circumstance, and he possessed a viable political asylum claim that the BIA ignored. We hold that the BIA did not abuse its discretion in refusing to reopen Anin's deportation order because Anin received proper notice of his deportation proceeding under section 242(B)(c)(3)(B) of the Immigration and Nationality Act ("INA"), his exceptional circumstances argument was time-barred pursuant to INA section 242(B)(c)(3)(A), and because the BIA is not required to reopen deportation orders based on political asylum claims like Anin's under 8 C.F.R § 3.2(a) (1999).[1] Accordingly, the final judgment of the BIA is AFFIRMED.

## I.

Petitioner Alexis Anin, a native of Burkina-Faso, entered the United States on October 30, 1991 with a C-1 visa as an "alien in transit." The visa gave him permission to remain in the United States only until the next day. However, Anin did not depart as required and remained in the United States without seeking approval from the Immigration and Naturalization Service ("INS"). During this

---

[1]All of the INA 242 subsections discussed infra since have been repealed. See IIRIRA § 308(b)(6).

time he met Linda McSwain, a United States citizen, and married her on January 14, 1994. On July 26, 1994, the INS concluded that Anin had entered into a sham marriage for the purpose of obtaining immigration benefits and issued an order to show cause under INA section 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) (1994). While in custody, pursuant to the order to show cause, Anin filed an application for asylum. His wife also filed an I-130 Visa Petition seeking permanent residence status for Anin.

On November 16, 1994, the Immigration Court scheduled a February 21, 1995 hearing on these matters, and sent notice of the hearing by certified mail to Anin's attorney of record. The notice was received and signed by someone in the office of Anin's attorney. Neither Anin nor his attorney appeared at the February hearing. At the hearing, a deportation order for Anin was entered in absentia. Later, after being notified of an interview for the I-130 Visa Petition, Anin and his wife appeared at the INS office in Atlanta and Anin was taken into custody. At that point, Anin's counsel of record claimed that he had not received notice of the deportation hearing. The attorney then informed Anin that he would be able to reopen the case. This conversation marked the first time that Anin learned of the deportation order entered in absentia against him.

A motion then was filed to reopen the deportation proceedings on account of

the attorney's lack of notice. The Immigration Court denied the motion after Anin's attorney admitted that a member of his staff received and signed for the notice of the deportation hearing. Anin's lawyer never informed his client that his firm actually had received notice of the hearing. Moreover, he advised Anin that the case would be reopened as soon as his wife's I-130 Petition was approved. The BIA denied Anin's appeal on March 7, 1996. Anin was never informed of this adverse decision by his lawyer.

In December 1996, Anin learned for the first time that his appeal to the BIA had been denied by way of a "bag and baggage" letter ordering Anin to report for deportation on February 1, 1997. Anin then went to his attorney's office and examined his case file where he learned that the original notice of hearing had been received by his attorney. Anin then sought the assistance of new counsel. On February 20, 1997, almost two years after the in absentia deportation order was issued, Anin filed a new motion to reopen his deportation order alleging lack of notice, and for the first time, exceptional circumstances of ineffective assistance of counsel, and a denial of due process. Anin and his wife also filed affidavits which outlined his ineffective assistance of counsel claim as required by law. See Matter of Lozada, Interim Decision 3059 (BIA 1988).

On July 16, 1998, a majority of the BIA, with four members dissenting and

4

two members not participating, denied the motion. The BIA held that Anin was time-barred under INA section 242B(c)(3)(A), 8 U.S.C. § 1252b(c)(3)(A) (1994), from advocating an "exceptional circumstance" exception to a denial of a motion to reopen a deportation order. The court ruled that the 180 day filing deadline was unambiguous and that even an ineffective assistance of counsel claim did not justify a statutory exemption. On August 10, 1998, Anin filed a petition to this Court for review of this decision.[2]

---

[2]On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, 3009-546, as amended by the Extension of Stay in United States for Nurses Act, Pub. L. No. 104-302, 110 Stat. 3656 (1996), which altered, inter alia, this Court's jurisdiction to review deportation orders previously granted jurisdiction under section 106 of the INA. In particular, IIRIRA section 306(b) repealed INA section 106, formerly 8 U.S.C. § 1105a (1994), and IIRIRA section 306(a) replaced it with INA section 242, now codified at 8 U.S.C. § 1252 (Supp. II 1996). The effective date of the IIRIRA is April 1, 1997. See IIRIRA § 309(a), reprinted in 8 U.S.C. § 1101 (history) (Supp. II 1996). Aliens in deportations proceedings before April 1, 1997 and who have a final deportation order entered more than 30 days after IIRIRA's September 30, 1996 enactment date are not subject to these permanent "new rules." See IIRIRA § 309(c)(1) (as amended). Rather, they are subject to IIRIRA's "transitional changes in judicial review" (the "transitional rules"). IIRIRA § 309(c)(1), (4) (as amended). A deportation proceeding begun after April 1, 1997, however, is governed by the IIRIRA "new rules." See IIRIRA §§ 306, 309(a).

As the case law stands now, there is a split in the federal circuits over whether a motion to reopen is a new proceeding or a continuation of an existing deportation proceeding. See Mejia Rodriguez v. Reno, 11th Cir., 1999, ___ F.3d ___, ___ (Nos. 98-4426, 98-5878, June 22, 1999) (citing Lerma de Garcia v. INS, 141 F.3d 215 (5th Cir. 1998) (continuation of proceeding); Sarmadi v. INS, 121 F.3d 1319, 1321 (9th Cir. 1997) (same); Chow v. INS, 113 F.3d 659, 665 (7th Cir. 1997) (same); Wright v. Ouellette, 171 F.3d 8, 12 (1st Cir. 1999) (new proceeding)); see also Stewart v.

5

II.

This Court reviews the BIA's denial of Anin's motion to reopen his deportation order for abuse of discretion. See INS v. Doherty, 502 U.S. 314, 323-24 (1992). In this particular area, the BIA's discretion is quite "'broad.'" Id. (quoting INS v. Rios-Pineda, 471 U.S. 444, 449 (1985)). An immigration judge may conduct a scheduled deportation hearing in absentia if an alien fails to appear at the appointed time.[3] However, a deportation order entered in absentia may be

---

INS, 4th Cir., 1999, __ F.3d __, __ (No. 98-1597, June 23, 1999) (continuation of proceeding). Based on the factual posture of the instant case, we need not address this circuit split. Regardless of whether Anin's February 20, 1997 motion to reopen is considered a continuation of his past deportation proceedings or a new deportation proceeding, its adjudication is governed by IIRIRA's "transitional rules." Anin's previous deportation proceedings date back to 1994. Therefore, if his 1997 motion to reopen were considered a continuation of these proceedings, IIRIRA's transitional rules would govern. See IIRIRA § 309(c)(1)(as amended). If Anin's 1997 motion to reopen were considered a "new"proceeding, IIRIRA's transitional rules still would govern because the motion was initiated prior to April 1, 1997. See IIRIRA §§ 306, 309(a).

Under the transitional rules, the "new rules" do not apply unless a case meets the enumerated exceptions in IIRIRA § 309(c)(4). None of these exceptions applies in the instant case. Therefore, we evaluate Anin's claim under the "old rules," INA § 242B(c)(3)(A), (B), 8 U.S.C. § 1252b(c)(3)(a), (b) (1994), despite the fact that they since have been repealed. See IIRIRA § 308(b)(6).

[3]INA Section 242B(c)(1) states:

(c) Consequences of failure to appear.

(1) In general

6

rescinded if a petitioner proves that his failure to appear resulted from exceptional circumstances or a lack of proper notice.[4]  Under this statutory framework, we

> Any alien who, after written notice required under subsection (a)(2) of this action has been provided to the alien or the alien's counsel of record, does not attend a proceeding under section 1252 of this title, shall be ordered deported under section 1252(b)(1) of this title in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is deportable.  The written notice by the Attorney General shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided under subsection (a)(1)(F) of this section.

8 U.S.C. § 1252b(c)(1) (1994)

[4]Sections 242B(c)(3)(A) and (B) of the INA provide:

> (3) Rescission of order.
> Such an order may be rescinded only —
>
> (A) upon motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2) of this section), or
>
> (B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) of this section or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien.

8 U.S.C. § 1252b(c)(3)(A) and (B) (1994).

7

evaluate Anin's petition to reopen his deportation proceedings.

The INA's plain language clearly allows the INS to fulfill its notice requirement in deportation proceedings by notifying an alien's attorney through certified mail.[5]

---

[5]INA Section 242B(a)(2) sets forth the methods for providing notice to an alien as follows:

> Deportation Procedures
>
> (2) Notice of time and place of proceedings in deportation proceedings under section 1252 of this title —
>
> (A) written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any), in order to show cause or otherwise, of —
>
> (i) the time and place at which the proceedings will be held, and
>
> (ii) the consequences under subsection (c) of the failure, except under exceptional circumstances, to appear at such proceedings; and
>
> (B) in such case of any change or postponement in the time and place of such proceedings, written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any) of —
>
> (i) the new time or place of the proceedings, and
>
> (ii) the consequences under subsection (c) of this section of

Anin concedes that his attorney of record at the time received notice of the February deportation hearing by certified mail in accordance with this provision of the INA. Furthermore, no statutory provision requires an alien to receive actual notice of a deportation proceeding. Indeed, the Code of Federal Regulations instructs that notice be provided to the attorney of record rather than the alien.[6]

The Federal Rules of Civil Procedure also favor notice of counsel of record rather than actual notice of the client. See Fed. R. Civ. P. 5(b) (stating that "whenever service under these rules is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless

> failing, except under exceptional circumstances, to attend such proceedings.

8 U.S.C. § 1252b(a)(2) (1994).

[6] Service Upon And Action by Attorney or Representative of Record

> (a) Representative Capacity. Whenever a person is required by any of the provisions of this chapter to give or be given notice; to serve or be served with any paper other than a warrant of arrest or a subpoena; to make a motion; to file or submit an application or other document; or to perform or waive the performance of any act, such notice, service, motion, filing, submission, performance, or waiver shall be given by or to, served by or upon, made by, or requested of the attorney or representative of record, or the person himself if unrepresented.

8 C.F.R. § 292.5(a) (1999) (emphasis added).

9

service upon the party is ordered by the court"). Case precedent also indicates that actual notice of an alien is not required under the INA. See Sewak v. INS, 900 F.2d 667, 669 n.6 (3d Cir. 1990) (noting in dicta that notice to attorney comprised actual notice to alien); Reyes-Arias v. INS, 866 F.2D 500, 502-3 (D.C. Cir. 1989) (finding actual knowledge of attorney constitutes reasonable notice); Newton v. INS, 622 F.2d 1193, 1194 (3d Cir. 1980) (holding that notice to original attorney not formally withdrawn comprised proper notice). Anin received notice as required by the INA. His lawyer received notice via certified mail. The statute unambiguously holds Anin responsible for his lawyer's actions and omissions. Therefore, despite the fact that Anin may not have received actual notice, the BIA did not abuse its discretion in denying his motion to reopen his deportation proceeding.

Additionally, the fact that Anin did not receive actual notice of the deportation hearing does not present a violation of the Due Process Clause. Although procedural due process in the deportation context requires a meaningful and fair hearing with a reasonable opportunity to be heard, see Landon v. Plasencia, 459 U.S. 21, 32-3 (1982); Nazrova v. INS, 171 F.3d 478, 482 (7th Cir. 1999), it does not demand that an alien receive actual notice. Due process is satisfied if notice is accorded "in a manner 'reasonably calculated' to ensure that

10

notice reaches the alien." Faroud v. INS, 122 F.3d 794, 796 (9th Cir. 1997) (quoting United States v. Estrada-Trochez, 66 F.3d 733, 736 & 736 n.1 (5th Cir. 1995)); cf. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318 (1950) (finding that "notice must be such as is reasonably calculated to reach interested parties"). In this case, the INS simply followed the INA statute and chose a method of notice authorized by the statute -- a method Congress itself determined was reasonably calculated to ensure proper notice. See 8 C.F.R. § 292.5(a) (1999); INA § 242B(a)(2), (c)(1), 8 U.S.C. § 1252b(a)(2), (c)(1) (1994). This method of notification does not violate an alien's due process rights. See Faroud, 1122 F.3d at 796 (holding that alien need not receive actual notice for due process requirements to be satisfied); Wijeratane v. INS, 961 F.2d 1344, 1346 (7th Cir. 1992) (holding that due process rights were not violated when alien claimed a lack of actual notice but his attorney received notice); cf. Furlong v. Havee, 885 F.2d 815, 818 (11th Cir. 1989) (finding that "notice to counsel afforded appellants all the due process they were due" in bankruptcy proceedings). So long as the method of notification was "reasonably calculated" to procure notice, the notice requirements of due process are satisfied. Id. For this reason, the BIA's refusal to reopen Anin's deportation proceeding did not violate due process.

The BIA also did not err in refusing to reopen Anin's deportation order

11

based on an ineffective assistance claim. Section 242B(c)(3)(A) of the INA contains an 180 day filing deadline to contest deportation orders if "exceptional circumstances" arise such as ineffective assistance. 8 U.S.C. § 1252b(c)(3)(A) (1994). All exceptional circumstances claims must be filed 180 days from the date of the deportation order. See id. Notably, Anin filed his exceptional circumstances appeal almost two years after the in absentia deportation order was issued. As a result, Anin's appeal is statutorily time-barred. Congressional filing deadlines are given a literal reading by federal courts. See United States v. Locke, 471 U.S. 84, 91 (1985). No federal circuit has recognized an exception to the INA's 180 day filing deadline for exceptional circumstances to reopen a deportation order. See Kamara v. INS, 149 F.3d 904, 906 (8th Cir. 1998) (finding that "Kamara did not file her motion to reopen until two years after the IJ issued the order of deportation. Therefore, even if [she] had established exceptional circumstances prevented her attendance, the IJ properly denied her motion to reopen as time-barred."). The provision is jurisdictional and mandatory. See id.; cf. Cheng Fan Kwok v. INS, 392 U.S. 206, 212 (1968) (noting that jurisdictional provisions must be interpreted "with fidelity to the terms by which Congress has expressed its wishes"). As a result, no exceptions have been carved into the 180 day filing deadline by federal courts. More generally, no exception to an INA deadline has been found even

12

where an alien acts blamelessly. See Torres v. INS, 144 F.3d 472, 475-6 (7th Cir. 1998) (stating that "the judge-made doctrines of estoppel and tolling are not applied to deadlines for taking appeals, even if the appellant . . . was without fault in failing to appeal within the usually very short time . . . allowed for filing an appeal"); see also Hadera v. INS, 136 F.3d 1338 (D.C. Cir. 1998); Mayard v. INS, 129 F.3d 438, 439 (8th Cir. 1997).

Filing deadlines inherently are arbitrary and harsh. As the Supreme Court has explained, "filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to persons who fall just on the other side of them, but if the concept is to have any content, the deadline must be enforced." Locke, 471 U.S. at 91. Here, Anin did not even narrowly miss the filing deadline. He filed late not by a day or so but by almost two years. To allow an exception in this case would stretch the filing provisions too far. As the Supreme Court has instructed, "with respect to filing deadlines a literal reading of Congress' words is generally the only proper reading of those words." Id. Based on these authorities, the statute's plain language, and general principles of statutory construction, we can find no exception to the 180 day filing deadline.

Lastly, the BIA did not abuse its discretion by not reopening Anin's

deportation order under 8 C.F.R. § 3.2(a) (1999).[7] The provision reposes very broad discretion in the BIA "to reopen or reconsider" any motion it has rendered at any time or, on the other hand, "[to] deny a motion to reopen." Id. The discretion accorded in this provision is so wide that "even if the party moving has made out a prima facie case for relief," the BIA can deny a motion to reopen a deportation order. Id. No language in the provision requires the BIA to reopen a deportation proceeding under any set of particular circumstances. Instead, the provision merely provides the BIA the discretion to reopen immigration proceedings as it see fits. Federal circuit courts consistently have interpreted the provision in this way. They have read 8 C.F.R. § 3.2(a) to give the BIA the discretion to reopen immigration proceedings in situations where federal courts lack the legal authority

---

[7] This provision of the C.F.R reads:

> (a) General. The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. A request to reopen or reconsider any case in which a decision has been made by the Board, which request is made by the Service, or by the party affected by the decision, must be in the form of a written motion to the Board. The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.

8 C.F.R. § 3.2(a).

14

to mandate reopening.  See Meija Rodriguez, ___ F.3d at ___ (denying petition to reopen but noting that the BIA could have reopened the deportation proceeding under 8 C.F.R. § 3.2(a));  Karapetian v. INS, 162 F.3d 933, 937 (7th Cir. 1998) (same); see also Wright, 171 F.3d at 9 (describing 3.2(a) as a discretionary provision under which the BIA at its own initiative can reopen proceedings).   In short, the provision gives the BIA non-reviewable discretion to dismiss Anin's claim.  We can find no abuse of discretion here.

Accordingly, we AFFIRM.