[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 25, 2005
THOMAS K. KAHN
CLERK

No. 04-12060
Non-Argument Calendar
_____

BIA No. A76-428-068

HASHEM LAHIJANI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of
the Board of Immigration Appeals

_____

(April 25, 2005)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Hashem Lahijani seeks review of the Board of Immigration Appeals's decision to affirm the immigration judge's denial of his motion to reopen his removal proceedings. We reluctantly deny his petition.

# I.

Lahijani is an Iranian citizen. He is a musician, which doesn't sit well with the mullahs who currently run the Iranian government. On "several occasions," Lahijani has been detained and tortured for playing his instrument. He is also Jewish. This, too, does not sit well with the mullahs. Iranian Jews are regularly charged with made-up allegations of spying for Israel and sentenced to long terms in jail by government-sponsored kangaroo courts.

Lahijani fled Iran so that he would no longer be tortured and have to live under the constant fear of being arrested. He came to the United States on February 10, 1998. After Lahijani left, the Iranian police raided his family's home looking for him. Lahijani's brother was arrested for spying and communicating with the western world; he lost his job and the title to his home.

In this country Lahijani petitioned for asylum, withholding of removal, and relief under the Convention Against Torture on May 11, 1998. Thereafter, the Immigration and Naturalization Service charged Lahijani with removal, which Lahijani conceded. The INS scheduled a hearing before an immigration judge in Miami on November 5, 1998.

On the appointed day, Lahijani and his attorneys, Edward Abramson and Samuel Blanco, showed up twenty minutes late. Tropical Storm Mitch had hit

Miami the night before, making it difficult to drive on the roads. When the three men arrived at the hearing, the IJ had already ordered that Lahijani be removed in absentia.

Abramson and Blanco moved to reopen the hearing because of an "exceptional circumstance," namely, the fact that a tropical storm had hit Miami the night before the hearing. The IJ denied the motion, stating that "traffic is not an exceptional circumstance excusing one's appearance." Through Abramson and Blanco, Lahijani appealed to the BIA on February 16, 1999, but a decision did not come quickly.

Soon after his attorneys filed the appeal, Lahijani moved to California. Abramson and Blanco told him to fill out the appropriate change of address form and send it back to them. They said they would forward it on to the INS.

But as the months passed and the BIA continued to sit on his appeal, Lahijani became concerned that he might be deported while it was pending. He tried to call Abramson and Blanco, but they would not return his phone calls. On his last attempt, the firm told Lahijani that Blanco, who was primarily responsible for his case, had moved and it did not know where he had gone.

Troubled by that news, Lahijani asked another attorney, Sheila Latimer, to find out the status of his appeal. In April 2000, over a year after Abramson and

Blanco had filed Lahijani's appeal of the IJ's decision, Latimer filed a "Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals," signed by both her and Lahijani. Latimer also filed a motion to expedite the BIA's decision on Lahijani's appeal because Lahijani "lives with the threat of forcible removal to Iran absent the asylum hearing he sought when he fled to this country seeking refuge."

Finally, more than two years after Latimer's motion to expedite the appeal, the BIA granted Lahijani's motion to reopen his asylum hearing on June 25, 2002. It remanded the case for further proceedings before the IJ, and notified Latimer that a new hearing had been scheduled for Lahijani on July 19, 2002. No notice was sent to Lahijani in California, presumably because the INS did not have his address. Apparently, Abramson and Blanco had not sent in the form as they had promised.

Latimer, however, did not believe that Lahijani was her client (nor did Lahijani believe that Latimer was his attorney because he did not pay her and did not sign a representation agreement with her). She did not inform Lahijani that he had won his appeal and that his hearing had been rescheduled. As a result, on the day of the hearing neither Lahijani nor Latimer showed up. The IJ again ordered that Lahijani be removed in absentia.

4

Meanwhile, after several more months of hearing nothing about his appeal (because Latimer had not passed on the information), Lahijani hired a third attorney, Marjan Bahmani, to inquire about the status of his case. Bahmani was informed that a new hearing had been scheduled on July 19, but that because Lahijani or his counsel had not shown up, the IJ had again ordered that Lahijani be removed in absentia.

Bahmani immediately filed a motion with the IJ to reopen the hearing, arguing that Abramson and Blanco had been ineffective by not notifying Lahijani of the hearing, and that the situation in Iran had worsened since Lahijani had filed his original asylum petition. The IJ denied this second motion to reopen the asylum hearing because Lahijani failed to allege facts sufficient to demonstrate that his prior counsel was ineffective.

The BIA summarily affirmed and adopted the IJ's decision. Lahijani now offers four reasons why his petition to review the BIA's decision should be granted.

## II.

Lahijani first contends that he did not receive notice of the rescheduled hearing. Thus, Lahijani argues, the IJ abused its discretion by denying his second motion to reopen his asylum hearing. Lahijani is incorrect.

5

The immigration statutes require the INS to serve an alien with proper notice of his asylum hearing. If it does not serve the alien with proper notice, the hearing is invalid and can be reopened at anytime. See 8 U.S.C. § 1229a(b)(5)(C)(ii). Actual notice, however, is not required. The INS meets its statutory obligation if it serves the alien's counsel of record with notice of the hearing. Anin v. Reno, 188 F.3d 1273, 1277 (11th Cir. 1999); see also Matter of Borocio, 19 I. & N. Dec. 255, 259 (1985).

That's what happened here. Latimer filed a "Notice of Entry of Appearance" on April 27, 2000, stating, "I hereby enter my appearance as attorney (or representative) for and at the request of the following named person(s): Hashem Lahijani." The INS served Latimer, Lahijani's counsel of record, with proper notice of the July 19, 2002 hearing on July 3, 2002. Lahijani does not argue that this notice was defective. Accordingly, the INS's July 3, 2002 notice to Latimer was also a constructive notice to Lahijani of his rescheduled hearing. See Anin, 188 F.3d at 1277.

## III.

In the alternative, Lahijani contends that, despite the fact that he had constructive notice of the hearing, his failure to appear was due to the exceptional circumstance that his counsel was ineffective and therefore, should be excused.

6

The immigration statutes mandate that an alien's failure to attend a hearing shall be excused, and the hearing reopened, if the alien "demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). Ineffective assistance of counsel has been held to be such a circumstance. However, as with habeas petitioners, the standard for an alien to prove that he had ineffective assistance of counsel is high. Specifically,

> [a] motion to reopen or reconsider based upon a claim of ineffective assistance of counsel requires (1) that the motion be supported by an affidavit of the allegedly aggrieved respondent setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations the counsel did or did not make to the respondent in this regard, (2) that counsel whose integrity or competence is being impugned be informed of the allegations leveled against him and be given an opportunity to respond, and (3) that the motion reflect whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not.

Matter of Lozada, 19 I. & N. Dec. 637, 639 (1988); see also Gbaya v. U.S. Attorney Gen., 342 F.3d 1219, 1221–23 (11th Cir. 2003) (applying the Lozada test for ineffective assistance of counsel).

Lahijani argues that Abramson and Blanco, his first attorneys, were ineffective because they did not return his phone calls and did not file his change-of-address form, which, if they had, would have given Lahijani notice of the July

7

19, 2002 hearing. Even if true, these allegations do not establish an exceptional circumstance.

As of April 27, 2000, before the BIA issued its decision to remand Lahijani's case for a new hearing, Latimer was Lahijani's official counsel of record. When the BIA finally issued its decision more than two years later, it notified Latimer—not Abramson and Blanco—that Lahijani had won the appeal. And on July 3, 2002, the INS notified Latimer—not Abramson or Blanco—that Lahijani's hearing was rescheduled for July 19, 2002. Abramson and Blanco simply were not in the picture when the rehearing was scheduled.

Lahijani does not argue that Latimer was ineffective. Rather, he argues that Latimer was not his attorney. (In support, Lahijani cites to a letter in the record from Latimer stating that she did not believe she represented him.) But this is contrary to the "Notice of Entry of Appearance" signed by both Latimer and Lahijani, which states, "I hereby enter my appearance as attorney (or representative) for and at the request of the following named person(s): Hashem Lahijani." And, it is also contrary to the motion to expedite the appeal that Latimer filed on Lahijani's behalf. Clearly, both knew that Latimer was acting as Lahijani's attorney.

Moreover, Lahijani has failed to demonstrate any of the <u>Lozada</u> factors in regard to Latimer as his counsel. Therefore, he has not met his burden to demonstrate exceptional circumstances that would excuse his absence from the July 19, 2002 asylum hearing.

**IV.**

Lahijani's third contention is that the failure to afford him a hearing on his asylum petition denied him due process under the Fifth Amendment. This argument is meritless.

Under the Due Process Clause of the Fifth Amendment, an alien must be afforded an opportunity to be heard on his removal proceedings and notice of that opportunity. See <u>Fernandez-Bernal v. U.S. Attorney Gen.</u>, 257 F.3d 1304, 1310 n.8 (11th Cir. 2001). "Due process is satisfied if notice is accorded in a manner reasonably calculated to ensure that notice reaches the alien." <u>Anin</u>, 188 F.3d at 1277–78.

Lahijani was afforded not one, but two opportunities to contest removability and present his claims for asylum, withholding of removal, and relief under the CAT. The INS sent the notice of his two hearings to his respective attorneys-of-record at the time those hearings were scheduled. This was "reasonably calculated

to ensure that notice reaches the alien." See id. Accordingly, Lahijani was not deprived of due process under the Fifth Amendment.

## V.

Finally, Lahijani contends that the IJ abused its discretion by not reopening his asylum hearing based on deteriorating conditions for Jews in Iran.

While Lahijani is correct that the IJ has discretion to reopen an asylum hearing because of new, "material" evidence, the new evidence must not have been "available or could not have been discovered or presented at the [alien's] former hearing." 8 C.F.R. § 3.2(c)(1). That is, for the IJ to have discretion to reopen a hearing based on new evidence, there must have been evidence presented at a "former hearing." Here, Lahijani did not have a former hearing because he failed to show up. He was found removable in absentia twice. Thus, 8 C.F.R. § 3.2(c)(1) cannot apply.

**PETITION DENIED**.