[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11791
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 16, 2005
THOMAS K. KAHN
CLERK

BIA Agency Nos. A95-551-857 & A95-551-858

LILIA PARRA CONTRERAS,
JAIME ALEXIS MURILLO HERNANDEZ,
MONICA C. MURILLO PARRA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 16, 2005)

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Lilia Parra Contreras, Jaime Alexis Murillo, and Monica C. Murillo Parra

petition for review of the order of the Board of Immigration Appeals ("BIA")

denying their motion to reconsider their removal proceedings. We deny their

petition.

## I.

Contreras, Murillo, and their minor daughter, Murillo Parra, are natives and citizens of Colombia. Murillo and Murillo Parra entered this country on May 19, 2001, as nonimmigrant B2 visitors for pleasure authorized to stay until no later than November 18, 2001. Contreras entered this country on August 30, 2001, as a nonimmigrant B2 visitor for pleasure authorized to stay until no later than March 1, 2002. On July 18, 2002, the former Immigration and Naturalization Service issued Notices to Appear charging the petitioners with removability because they stayed in this country longer than permitted in violation of § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). On July 29, 2002, Contreras applied for asylum and asserted derivative asylum claims on behalf of her husband and daughter pursuant to 8 U.S.C. § 1158(b)(3).[1]

In her asylum application and testimony before the immigration judge ("IJ"), Contreras asserted that she sought asylum for herself and her family because she feared that they would be killed if forced to return to Colombia. She stated that her family has for many years been involved in politics in the municipality of La Vega, where her family owns a coffee plantation (although petitioners lived in Bogota

---

[1] Petitioners also sought withholding of removal under the INA and relief under the United Nations Convention Against Torture ("CAT").

2

where they operated a coffee shop). She claimed that her father was killed in 1957 and that her brother died mysteriously in 1987 because of their political opinions and activities. Another brother was forced to resign from the city council in 1999 because of death threats.

Contreras claimed that members of the Revolutionary Armed Forces of Colombia ("FARC"), an insurgent guerrilla organization, targeted her because she campaigned on behalf of anti-corruption members of the Liberal Party. In mid-1997, a guerrilla commander insisted on meeting with Contreras in order to influence her involvement in a mayoral campaign and to extort money from her. Afterwards, Contreras reported the meeting to the Colombian army. In November 1997, the guerrilla commander ordered another meeting with Contreras and the winning candidate whom she backed. A few weeks later, the Colombian army ambushed and killed the guerrilla commander and another FARC member.

Contreras stated that in March 1998 she learned that FARC had hired assassins to kill her. After that time Contreras returned to the family plantation near La Vega only a handful of times, including once to attend her mother's funeral in February 2000 when she was again warned about assassination. In May 2000 she began receiving threatening phone calls at her home in Bogota from a FARC commander who wanted to meet with her, but she feared that he would have her kidnaped. Contreras admitted that she had never been arrested, beaten,

3

imprisoned, or had a FARC guerrilla come to her house in Bogota.

In 1999, Contreras brought her adult son and daughter to the United States.[2] Contreras subsequently traveled between Colombia and this country five times. In July 2001, she returned to Bogota for the last time in order to sell the family's house, but was unable to do so. Contreras stated that she has been told that members of FARC are still looking for her.

After a hearing on June 17, 2003, the IJ found Contreras credible but denied petitioners' application for asylum and other relief and ordered them removed. The IJ determined that Contreras had not been persecuted because of her political opinion or membership in any social group, race, religion, or nationality as required by the statutory definition of "refugee" contained in 8 U.S.C. § 1101(a)(42)(A). The IJ found that FARC targeted Contreras for retribution because they blamed her for the Colombian army's killing of two of its members. The IJ also found that while FARC had subjected Contreras to extortion, she had not been persecuted. Additionally, the IJ determined that Contreras' frequent trips between the United States and Colombia indicated that she had attempted to make an orderly departure and was not a refugee fleeing her country.

On July 16, 2003, petitioners filed a timely notice of appeal with the BIA and included a one-page description of the "reasons for appeal." Petitioners cited

---

[2] Contreras admitted that both of these children are now living in this country illegally.

4

two such reasons: (1) The IJ erred by not finding past persecution based on FARC's threats against Contreras and her family, which were motivated by her family's association with the Liberal party; and (2) the IJ erred by not finding that Contreras' had demonstrated a well-founded fear of persecution if removed to Colombia based on FARC's violence against opposition supporters, Liberal party members, and Contreras' family. Although the BIA issued a briefing schedule, petitioners' counsel did not file a separate brief. The BIA affirmed the IJ's decision, without opinion, on September 28, 2004.

Petitioners filed a timely motion to reconsider on October 28, 2004.[3] In the motion to reconsider, petitioners argued that Contreras had established a well-founded fear of persecution based on her membership in (1) a particular social group supporting the Colombian military and (2) a particular social group campaigning against corrupt politicians. Contreras also contended that the IJ erred by failing to find a nexus between her "anti-corruption ideology" and the threats on her life and that the IJ had mischaracterized FARC's motive as "revenge, pure and simple." On March 7, 2005, the BIA denied the motion to reconsider because her claim to be a member of a particular social group was not part of her original appeal and she had failed to demonstrate any error of fact or law in the IJ's

---

[3] Petitioners also filed a supplemental motion to reopen, asserting ineffective assistance of counsel, on December 27, 2004; however, they have expressly abandoned their arguments in support of the motion to reopen.

5

decision. The petitioners filed this petition for review on April 1, 2005.

## II.

As an initial matter, we note that petitioners did not timely appeal the BIA's September 28, 2004 final order affirming, without opinion, the IJ's removal order. This Court is therefore without jurisdiction to consider the underlying claims for asylum and other relief.[4] 8 U.S.C. § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal"). Accordingly, this Court's review is limited to the BIA's March 7, 2005, order denying petitioners' motion to reconsider

"The decision to grant or deny a motion to reopen or reconsider is within the discretion of the [BIA] . . . ." 8 C.F.R. § 1003.2(a).[5] Accordingly, we review the

---

[4] To be eligible for asylum, an applicant must first demonstrate that he is a refugee. 8 U.S.C. § 1158(b)(1). The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

Id. § 1101(a)(42)(A). To establish refugee status, an applicant for asylum must present specific and credible evidence that he has experienced past persecution or that he has a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1)–(2); Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001). Claims for withholding of removal and CAT relief are subject to a more stringent standard than the standard for granting asylum. See Al Najjar, 257 F.3d at 1292–93, 1303–04.

[5] This section was previously numbered 8 C.F.R. § 3.2.

BIA's denial of a motion to reconsider only for abuse of discretion. Assa'ad v. U.S. Attorney General, 332 F.3d 1321, 1341 (11th Cir. 2003). And we have stated that 8 C.F.R. § 1003.2(a) practically confers "non-reviewable discretion" on the BIA. See Anin v. Reno, 188 F.3d 1273, 1279 (11th Cir. 1999) (per curiam) (affirming denial of motion to reopen). "Judicial review of denials of discretionary relief incident to deportation proceedings . . . is limited to determining 'whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious.'" See Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir. 1985) (per curiam) (citation omitted) (addressing a motion to reopen). Motions to reconsider are disfavored in deportation proceedings because "every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." See INS v. Doherty, 502 U.S. 314, 323, 112 S. Ct. 719, 724–25 (1992) (addressing a motion to reopen).

A proper motion to reconsider must "specify[] the errors of fact or law in the prior [BIA] decision and . . . be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). "A motion to reconsider asserts that at the time of the [BIA's] previous decision an error was made." Zhao v. U.S. Dep't of Justice, 265 F.3d 83, 90 (2d Cir. 2001) (citation omitted). When the BIA reconsiders one of its prior decisions, "it takes itself back in time and looks at the case as though a decision had never been entered." Id.

7

In their brief to this Court, petitioners urge that their motion to reconsider noted several errors of fact and law made by the IJ, and, in turn, by the BIA when it affirmed the IJ without opinion. Specifically, petitioners contend that the IJ misapplied the legal standards for granting asylum and erred in determining that they had not established a well-founded fear of persecution in Columbia because of Contreras' political activities.

To the extent that petitioners invite us to review the IJ's denial of their asylum claim, we decline to do so. Our review is limited to the BIA's denial of petitioners' motion to reconsider the decision to affirm the IJ without opinion. Although "[w]hen the BIA summarily affirms the IJ's decision without an opinion, the IJ's decision becomes the final removal order subject to review" by this Court, Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1230 (11th Cir. 2005), petitioners' appeal of the BIA's denial of their motion to reconsider is not a second chance for them to assert to this Court that the IJ erred in denying their claims for relief. If it were, then the jurisdictional bar of 8 U.S.C. § 1252(b)(1) for filing a late petition for review of a final removal order would be undermined.

Accordingly, the sole issue properly before this Court is whether the BIA abused its administrative discretion by not reconsidering its affirmance of the IJ's removal order and denial of relief. As a practical matter, 8 C.F.R. § 1003.2(b)(1)'s requirement that a motion to reconsider must "specify[] the errors of fact or law in

8

the prior [BIA] decision and shall be supported by pertinent authority" is difficult

to meet when the prior decision at issue is an affirmance without opinion.

Nonetheless, as the Seventh Circuit has noted, "[a] motion that merely republishes

the reasons that had failed to convince the tribunal in the first place gives the

tribunal no reason to change its mind." Ahmed v. Ashcroft, 388 F.3d 247, 249 (7th

Cir. 2004) (noting that a motion to reconsider "'is a request that the [BIA]

reexamine its decision in light of additional legal arguments, a change of law, or

perhaps an argument or aspect of the case which was overlooked'" (citation

omitted)).

Petitioners asserted in their motion to reconsider that Contreras was a

refugee because of her well-founded fear of persecution based on her membership

in (1) a social group supporting the Colombian army and (2) a group of politicians

working against corruption in Colombian government. In denying the motion, the

BIA rejected this claim because it was not part of the original appeal and was

therefore not a proper basis for reconsideration. Even if a more liberal reading of

petitioners' reasons for appeal included with their notice of appeal to the BIA

might allow for a conclusion that petitioners did in fact raise their social group

arguments, we note that a grouping of individuals on account of their political

opinion (e.g., a political party) is not a "social group" as defined by the BIA,

absent some other "immutable characteristic." See Matter of Acosta, 19 I. & N.

9

Dec. 211, 233 (BIA 1985) (interpreting "the phrase 'persecution on account of membership in a particular social group' to mean persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic . . . such as sex, color, or kinship ties, or . . . a shared past experience such as former military leadership or land ownership"), overruled on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439, 439 (BIA 1987). Thus, the BIA did not abuse its discretion in denying petitioners' motion to reconsider on that ground.

Petitioners also claimed in their motion to reconsider that the IJ erred in finding that the threats on Contreras' life did not stem from her political activities against corruption. In denying the motion, the BIA stated merely that petitioners "ha[d] not demonstrated any error of fact or law in the prior Immigration Judge's decision and our affirmance of that decision." The IJ determined that FARC's primary motive for killing Contreras was revenge for the killing of the guerrilla commander. The sequence of events leading up to and following that event clearly supports that determination. Given our deferential standard of review, we conclude that the BIA did not abuse its discretion in denying petitioners motion to reconsider.

**PETITION DENIED.**