[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2007
THOMAS K. KAHN
CLERK

No. 06-11775
Non-Argument Calendar

_____

BIA No. A97-946-075

YELENA PAVLOVA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 30, 2007)**

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Yelena Pavlova, a native of Turkmenistan who withdrew her application of

asylum in order to depart voluntarily, petitions for review of the Board of

Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of her motion to reopen, which she filed 10 days before the date by which she had agreed to depart. After a thorough review of the record, we deny the petition.

## I. Background

After Pavlova attempted to enter the United States in May 2004, and the INS determined she was inadmissible, the INS served Pavlova with a Notice to Appear, charging her with removability because she had fraudulently procured a visa, in violation of INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), and because she had applied for admission without a valid visa or other entry document, in violation of INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Thereafter, Pavlova, with the help of retained counsel Grant Kaplan, filed an application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Pavlova indicated that she was applying for asylum and withholding of removal on the basis of her nationality, membership in a particular social group, and under the CAT. She alleged that, among other things, she had experienced harm and that she feared mistreatment and torture if she returned, but only stated that she would explain further in court.

2

Thereafter, Pavlova filed an unsigned, typed statement, written in English, describing her life in Turkmenistan. In particular, the statement focused on her experience of being stalked, harassed, assaulted, kidnaped, and raped by an ex-boyfriend government official named Murat. Eventually, Kaplan filed a pre-trial brief on Pavlova's behalf, arguing that she had experienced past persecution and was qualified for asylum as the victim of "gender-related violence" and domestic abuse.

After appearing at a hearing before an IJ in March 2005, Pavlova agreed to withdraw her asylum application and depart voluntarily. The IJ's order stated, in its entirety:

> Upon agreement of the parties, the applicant withdraws her [application for asylum and withholding of removal] with prejudice [and] agrees to depart on or before [July 8, 2005]. If she so departs[,] these proceedings will terminate. If[,] however, she remains in the United States beyond [July 8, 2005], an order of removal on the charges contained in the [NTA] will issue automatically [without] the benefit of further proceedings or hearing[s].

About 10 days before the voluntary departure date, Pavlova, represented by new counsel Matthew Baxter, filed a motion to "recalendar" her proceedings and an affidavit in support of the motion alleging that Kaplan had rendered ineffective assistance by failing to fully apprise her of the removal process, failing to sufficiently prepare for the hearing, and providing incorrect information regarding

3

voluntary departure and possible alternatives to asylum.

In support of her request to "recalendar" the matter, Pavlova asserted that the IJ's suggestion that she could still secure a visa was "fatally flawed" because there was "virtually no chance" she would receive a visa in light of her fraud charges. Accordingly, she argued that her decision to withdraw her motion was not knowing or voluntary, that the agreement embodied in the IJ's order was fundamentally unfair, and that she had been deprived of due process and of her day in court. Notably, Pavlova's motion did not state that Kaplan had been informed of her allegations and had been given an opportunity to respond, or that a complaint had been filed against Kaplan with a disciplinary authority.

On July 6, 2005, the IJ ruled on Pavlova's motion to recalendar, construing it as a motion to reopen and denying it because the motion was untimely, the record did not support the allegations, the decision to withdraw the asylum application was voluntary, and Pavlova had failed to comply with In re Lozada, 19 I&N Dec. 637 (BIA 1988).

Pavlova appealed this decision to the BIA, asserting that (a) the IJ should have treated her motion as one filed prior to the entry of a decision under the "catch-all" provision in 8 C.F.R. § 1003.23(a) rather than as a motion to reopen; (b) Kaplan's ineffective assistance was clear on the record and that as a result of his conduct she had entered the agreement to withdraw her application; and (c) the

4

agreement was not knowing or voluntary and was fundamentally unfair. Specifically, she argued that: (1) voluntary departure was unavailable to her and that the order did not grant her this relief, but instead the order simply allowed her to withdraw her application, making it likely that she would be inadmissable under INA § 212(a)(9)(B)(i)(I), 8 U.S.C. § 1182(a)(9)(B)(i)(I); (2) unless she was granted asylum or withholding of removal she was "most likely inadmissible under INA § 212(a)(6)(C)(i)," 8 U.S.C. § 1182(a)(6)(C)(i); (3) "there [was] virtually no chance that [she would] ever receive a visa of any kind" because she had been charged with procuring a visa fraudulently; and (4) the "odds against [her] lawful return [were] so prohibitive that it [could not] properly be supposed that [Kaplan] had a sound legal strategy in mind" and any benefit to her was illusory. Finally, Pavlova argued that the IJ breached its duty by giving her flawed advice, denied her the right to have her asylum claim adjudicated, and further aggravated the harm done by Kaplan.

The BIA dismissed the appeal, finding that Pavlova had "failed to demonstrate that the conduct of her previous attorney was so egregious as to render the proceedings unfair," citing Dakane v. U.S. Att'y Gen., 399 F.3d 1269 (11th Cir. 2005), In re B-B-, and Lozada. Pavlova then petitioned this court for review.[1]

_____

[1] Pavlova also filed a separate motion for reconsideration with the BIA. The BIA apparently granted it, at least in part, and remanded Pavlova's case to the IJ to issue an order of removal and designate a country of removal. Pavlova then moved this court to dismiss her

5

## II. Discussion

Pavlova challenges the decision to construe her motion to recalendar as a motion to reopen. She also disputes the BIA's finding that her counsel's alleged ineffective assistance was not so egregious as to render her original removal proceeding unfair. Finally, Pavlova argues that the IJ's personal involvement in her decision to withdraw her application also prejudiced her.

### A. Motion to Recalendar

Because the BIA did not adopt the IJ's opinion, we will review only the BIA's decision in this case. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "We review the BIA's denial of a motion to reopen for an abuse of discretion." Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). "[This] review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (quotation marks omitted). "In this particular area, the BIA's discretion is quite broad." Anin v. Reno, 188 F.3d 1273, 1276 (11th Cir. 1999) (quotation marks omitted).

The INA does not define a motion to recalendar. Federal regulations refer to

appeal without prejudice due to a lack of jurisdiction as a result of the BIA's remand. However, in an order entered October 12, 2006, this court denied Pavlova's motion and allowed her appeal to proceed, holding that the BIA's limited remand had not interrupted our jurisdiction over the appeal.

such a motion, but generally only in the context of a case that has been administratively closed or continued, and usually in reference to the government, not the alien.[2] See e.g. 8 C.F.R. §§ 245a.20(e)(2)(i), 1240.70(g).

In general, an alien may file one motion to reopen removal proceedings. INA § 240(c)(7)(A), 8 U.S.C. § 1229a(c)(7)(A). "An [IJ] may upon his or her own motion at any time, or upon motion of the [government] or the alien, reopen . . . any case in which he or she has made a decision, unless jurisdiction is vested with the [BIA]." 8 C.F.R. § 1003.23(b)(1) (emphasis added). Nevertheless, an alien must generally file a motion to reopen within 90 days of "the date of entry of a final administrative order of removal, deportation, or exclusion." Id.; INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i).

"The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." INA § 240(c)(7)(B), 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.23(b)(3). "A motion to reopen will not be granted unless the [IJ] is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R.

---

[2] Thus, "[i]n the case of an alien whose previously initiated exclusion, deportation, or removal proceeding had been administratively closed or continued indefinitely . . . the [government] shall make a request for recalendaring." 8 C.F.R. § 245.15(r)(ii); 8 C.F.R. § 1245.15(r)(2)(ii).

7

§ 1003.23(b)(3).

We need not decide whether the IJ improperly treated the motion as a motion to re-open rather than a motion to recalendar because we conclude that any error is harmless as the circumstances in this case would have justified denying the motion to re-open. Accordingly, we deny her petition as to this issue.

### B. Ineffective Assistance of Counsel

Generally, in order to allege ineffective assistance of counsel in a motion to reopen, an alien must: (1) attach an affidavit to the motion; (2) inform the former counsel of the allegations and provide an opportunity to respond; and (3) indicate whether or not a complaint has been filed with the appropriate disciplinary authority. In re Lozada, 19 I&N Dec. at 639. This court has held that the BIA may require "substantial, if not exact, compliance" with the Lozada procedure. Dakane, 399 F.3d 1274. In addition to the procedural requirements, the alien must show that "the conduct of former counsel was so egregious that it rendered [the] hearing unfair." In re B-B-, 22 I&N Dec. at 311; see also Dakane, 399 F.3d at 1274 (holding that the alien must demonstrate prejudice, which "exists when the performance of counsel is so inadequate that it may have affected the outcome of the proceedings").

"The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense . . . in lieu of being subject to [removal]

proceedings . . . or prior to the completion of such proceedings, if the alien is not deportable [due to conviction for certain crimes or terrorist activities]." INA § 240B(a)(1), 8 U.S.C. § 1229c(a)(1); see also 8 C.F.R. § 1240.26 (b)(2).

"[T]he voluntary departure grant involves a quid pro quo arrangement between an alien and the [g]overnment . . . . In return for departing within the time afforded for voluntary departure, an alien avoids certain adverse consequences of a removal order." In re Zmijewska, 24 I&N Dec. 87, 92 (BIA 2007) (citing INA § 212(a)(9)(A)(ii), 8 U.S.C. § 1182(a)(9)(A)(ii) (declaring an alien who has been ordered removed from the United States inadmissible for 10 years). Further, voluntary departure provides a "generous period" in which to prepare for the actual departure. See In re B-B-, 22 I&N Dec. at 311. The BIA has held that "there are strong policy reasons for strictly adhering to and enforcing voluntary departure orders, not the least of which is to discourage dilatory behavior." Id. at 310. Further, "subsequent dissatisfaction with a strategic decision of counsel is not grounds to reopen." Id.

Although the record in this case suggests that Pavlova never fully complied with Lozada's procedural requirements, the BIA based its order on her failure to show prejudice. See Dakane, 399 F.3d at 1272 (noting "most" of the Lozada requirements were satisfied, but discussing prejudice). Here, Pavlova has failed to even suggest that she would not have been ordered removed but for her counsel's

9

alleged misrepresentation. She merely refers to her application for asylum, "however strong or weak," as her "only chance" to remain in this country. Cf. Dakane, 399 F.3d at 1275 (explaining that the petitioner had failed to show prejudice where he had neglected to "demonstrate or even address" how his counsel's alleged ineffectiveness "would have changed the . . . removal order.").

The record here suggests that Pavlova decided to pursue an alternative to her asylum request and affirmatively waived a hearing on that issue by withdrawing her application. See Reno v. Flores, 507 U.S. 292, 309, 113 S.Ct. 1439, 1450-51, 123 L.Ed.2d 1 (1993) (holding that "due process is satisfied by giving the detained alien juveniles the right to a hearing before an [IJ]," assuming they were competent to exercise that right, regardless of whether they actually exercised it). Pavlova cites no legal authority to support her allegation that she was "unduly influenced" into accepting the agreement, and does not point to any specific fact in the record in this regard.

Although voluntary departure is clearly less favorable than asylum, its benefits are still superior to removal, and there was never any guarantee that Pavlova would have prevailed on her application. This being so, the agreement was not illusory, and if it did also result in the abandonment of the asylum application, that was Pavlova's choice. As noted above, a change of heart is not a sufficient basis for granting a motion to reopen. In re B-B-, 22 I&N Dec. at 310.

10

### III. Conclusion

In sum, Pavlova has failed to establish that she suffered prejudice as a result of counsel's conduct, and the BIA did not abuse its discretion in affirming the IJ's denial of her motion to reopen.[3]  Accordingly, we **DENY** the petition.

---

[3] To the extent that Pavlova moves, in her initial brief, for reconsideration of our earlier order denying her request to dismiss her petition without prejudice pending the conclusion of the ongoing administrative proceedings, that motion is DENIED as nothing she alleges changes the analysis or result of that order.  Similarly, nothing about those proceedings requires us to stay consideration of this appeal.